[Crim. No. 6884. Fourth Dist., Div. One. May 28, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BRENT MARES, Defendant and Appellant.

1014

COUNSEL

J. Perry Langford, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, A. Wells Petersen and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WHELAN, J.*—David Brent Mares has appealed from his commitment to the Youth Authority after a jury found him guilty of conspiracy (Pen. Code, § 182, subd. 1) to commit the crime of robbery (Pen. Code, § 211) and of simple assault (Pen. Code, § 240), an offense included within the original charge of assault with a deadly weapon. The jury fixed the degree of the intended robbery as first degree and found defendant used a firearm in the commission of the conspiracy and in the assault (Pen. Code, § 12022.5).

Those findings are set forth in the order of commitment except as to the use of a firearm in commission of the assault, which was stricken by the judge since the assault of which Mares was found guilty was adjudged a misdemeanor.

Mares does not attack the verdicts of guilty, and states his appellate contentions in this language: "The findings of weapon use in violation of Penal Code section 12022.5 and of first degree robbery must be stricken, because the use allegation is inapplicable under the statute, and the fixing of the degree is unsupported by the pleadings, instructions, and findings."

Defendant's brief contains no statement of the facts as they appear in the evidence at the trial, apparently because he believes the factual background is irrelevant to the issues raised on appeal. One of his subsidiary contentions is that the trial court erred in not instructing the jury *sua sponte* that in order to fix the degree of the intended robbery as of the first degree the jury must first find that the conspirators agreed a dangerous or deadly weapon would be used in the robbery. For that

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

reason consideration of the factual background is necessary to deal with the issues raised.

On April 1, 1974, Mares and two companions, Bill Seaman and Edward Lasko, were in an automobile on a street in Coronado. A fourth man, Larry Miles, was behind the wheel. Miles was a California Bureau of Narcotics Enforcement (BNE) agent. In another car, parked to the rear, was another BNE agent, Stephen Helsley, with a handbag full of paper currency.

Mares was armed with a loaded .22 caliber revolver and had a number of other cartridges loose in his pocket. Seaman had a loaded sawed-off rifle concealed in his trousers. The events which preceded this gathering together, and which disturbed the tableaux vivants described above, are as follows:

On March 26, 1974, Miles met Phillip Hutchinson and made arrangements for a sale and delivery to Miles of two pounds of cocaine for $29,000. The transaction was scheduled to take place on Friday, March 29 in the bedroom of Hutchinson's house.

During a discussion within the next few days, Miles and Hutchinson agreed that the cocaine transaction scheduled for Friday night should be postponed until Monday, April 1.

On April 1, Miles talked to both Hutchinson and Lasko and firmed up an arrangement for Miles to meet Lasko at his residence at approximately 8 p.m. Before he met with Hutchinson and Lasko, however, Miles met with other police officers and made a plan as to where the other officers would be positioned, having in mind that the transaction would take place at Fifth and Pomona Streets in Coronado.

The presence of Coronado police officers was desirable in part because Hutchinson, in the original arrangement for a sale in his house, said his partner would be sitting there with a loaded shotgun.

Miles proceeded to a residence at 300 D Street in Coronado where he met Lasko, who entered Miles' car and directed him to the 600-block of Orange Street in Coronado where they met Seaman, who was introduced to Miles as "Paul." They then drove to Fifth and Pomona Streets, where they parked in front of Helsley's vehicle. After discussing possible future transactions, Seaman exited the car and went to Helsley's vehicle, where Helsley showed Seaman the money.

After the money was shown, everyone, with the exception of Helsley, proceeded to the Coronado Municipal Golf Course, where Mares entered Miles' vehicle and joined Lasko and Miles in the front seat.

They returned to Fifth and Pomona Streets where Helsley was parked. Miles then turned to Mares and asked if he could see the cocaine. Mares brought out his revolver, pointed it at Miles and ordered Miles not to move. Miles complied and shortly thereafter Seaman placed a gun to the back of Miles' head and ordered him not to move or he would be killed.

Miles signaled Helsley and the other officers that something was wrong. In response to a command from Mares, Miles yelled to Helsley that the cocaine was good and that Helsley should bring the money over. Mares kept his gun pointed at Miles as Helsley approached the vehicle. A conversation ensued between Helsley and Mares, and Helsley refused a demand by Mares to enter the car, but stepped back into the blind area to the rear of the vehicle while Miles jumped out of the car. As he did so Miles grabbed his weapon. He heard a gun fired and thereafter a gun battle ensued in which Seaman and Mares were wounded. At one point during the gun battle, just before he was wounded, Mares exited the vehicle, squatted down in the street, and pointed his weapon at Coronado Police Detective Dennis Grimaud. Eventually Mares, Lasko and Seaman were arrested.

There was no cocaine in the possession of any of the suppositious sellers. As a witness in his own behalf Mares testified he was staying at the house of Hutchinson, whom he knew well. On the morning of April 1, a man known to him only as "Don," whom he knew slightly, came to the house, and employed Mares to act as bodyguard while Don made a sale of two pounds of cocaine. Don said he wished to protect himself against a rip-off. He furnished Mares with a pistol and ammunition and was to meet Mares at the golf course. Don did not show up at the golf course. Seaman testified he, too, was employed by the evanescent "Don" for the same purpose, and was furnished by Don with the sawed-off rifle and ammunition.

The People concede conspiracy is not among the crimes mentioned in Penal Code section 12022.5. They suggest, on the authority of *People* v. *Strickland,* 11 Cal.3d 946 [114 Cal.Rptr. 632, 523 P.2d 672], that the finding of having used a firearm in committing the crime of conspiracy to commit robbery be amended to show that Mares, at the time of committing the offense, was armed with a firearm within the definition of Penal Code section 12022.

Mares proposes that the finding of having used a firearm or having been armed with a firearm be stricken entirely, and that the degree of the intended robbery be reduced to second degree.

The suggested solution is wholly pragmatic based upon the calculation that conspiracy to commit robbery, found to be of the second degree, if attended by a finding of being armed with a firearm, carries a heavier minimum sentence, six years, than conspiracy to commit robbery found to be of the first degree, without the section 12022 finding, whose minimum is five years.

If it were to be held that section 12022 may be applied, and in this case should be applied, to a conviction of conspiracy to commit robbery of the *second* degree, Mares suggests the degree of the intended robbery as fixed by the jury may stand.

That suggested solution, however, is based upon Mares' antecedent argument that one found guilty of conspiracy to commit robbery, found to be of the first degree, may not, under the authority of *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], receive an enhanced minimum sentence under Penal Code section 12022.

 We consider first whether the court was required to instruct that the jury could fix the degree of the intended robbery as first degree only if they found the conspirators had agreed that one or more of them should be armed with a dangerous or deadly weapon, and whether the issue was properly before the jury.

 A conviction of robbery, should the evidence show the robber to have been armed with a dangerous or deadly weapon, may be found to be of the first degree, although the charge alleges only the elements of robbery. (*People* v. *Kelly,* 184 Cal.App.2d 611, 616 [7 Cal.Rptr. 600]; *People* v. *Pond,* 169 Cal.App.2d 547, 553 [337 P.2d 877].)

There is no reason that on the trial of a charge of conspiracy to commit robbery the degree may not be fixed as of the first degree, although the accusatory pleading is only that the defendant conspired to commit robbery.

 We conclude that under the instructions given by the court the jury was required to and, from the nature of their verdicts, did necessarily find that defendant planned with one or more others to

commit a robbery and armed himself for that purpose with a dangerous or deadly weapon. Whatever the original discussions may have encompassed, the conspiracy did not become frozen in its character, but remained alive until it was frustrated; its final character, so far as the degree of the intended robbery was concerned, depended upon all the circumstances manifesting themselves during the life of the conspiracy and could only be determined in retrospect.

There was no error of the court in failing to give *sua sponte* the instruction which Mares now claims was necessary.

The finding the intended robbery was of the first degree was proper and fully sustained.

The reasoning of the court in *People* v. *Horn,* 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300], has some bearing on defendant's contention concerning the necessity of being armed as an element of the intended robbery. In that case the defendants had been charged with conspiracy to commit murder and were found guilty of conspiracy to commit first degree murder. The trial court refused to instruct that the character of the offense committed by them could be affected by evidence of diminished capacity, of which there was substantial evidence in the record.

The court in *Horn* held that the defendants were tried for conspiracy to commit a homicide. In doing so, it made these declarations, at pages 295-296, 297-298, 300:

"To comply with this section, the trier of fact must determine the identity of the conspired felony, and if that felony is divided into degrees, the degree of the felony.

"Homicide itself is not a crime, but a class of crimes, graduated according to the mental state and personal turpitude of the offender. [Citation.] Consequently, when the case involves a conspiracy to commit a homicide, the duty will devolve upon the jury to determine whether the homicide that the defendants conspired to commit was a first degree murder—a killing characterized by malice aforethought. Plainly a jury could not properly discharge its duty if it were ignorant of the relationship between diminished capacity arising from intoxication and the classes and degrees of homicide.

"The Attorney General, however, argues that conspiracy is a crime without degrees or lesser included offenses, and hence that the defense of diminished capacity goes not to the conspired homicide but only to the conspirators' capacity to agree among themselves. This argument mistakes the element of intent in the crime of conspiracy, and overlooks the duty of the jury under Penal Code section 182 to determine the crime, and the degree of the crime, which defendants conspired to commit.

"Conspiracy is a 'specific intent' crime. [Citations.] The specific intent required divides logically into two elements: (a) the intent to agree, or conspire, and (b) the intent to commit the offense which is the object of the conspiracy. [Citations.] To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they intended to commit the elements of that offense.

" . . . . . . . . . . . . . . . . . . .

" . . . Under Penal Code section 182 *the jury must also determine which felony defendants conspired to commit,* and if that felony is divided into degrees, which degree of the felony they conspired to commit. The jury cannot perform that task unless it is instructed on the elements of both the offense defendants are charged with conspiring to commit, and any lesser offense defendants assert to be the true object of the conspiracy.

"Moreover, section 182 clearly makes the punishment for conspiracy turn on the nature and degree of the conspired offense. Thus even if a defendant could be convicted of conspiracy in the abstract, he could not be punished until the trier of fact ascertained the criminal object of the conspiracy. To determine whether the object of defendants' conspiracy in the present case was the commission of a first degree murder, the trier of fact obviously would need to know the elements of that offense.

" . . . . . . . . . . . . . . . . . . .

"The record indisputably shows that defendants conspired to commit a homicide by the use of a 'bomb' as defined in section 189. Thus if defendants here conspired to commit murder, as distinguished from manslaughter, that murder was a first degree murder. On this record a verdict of conspiracy to commit second degree murder would be contrary to law."

In *People* v. *Calpito,* 9 Cal.App.3d 212, 219 [88 Cal.Rptr. 64], the court said: "The defendant was convicted of attempted robbery. The elements necessary to sustain a conviction of conspiracy to commit robbery are not identical with those involved in an attempted robbery. A conspiracy requires proof of some type of criminal agreement, which is not required in either robbery or attempted robbery."

It is equally true that the elements of robbery are different from those of conspiracy to commit robbery. Such a conspiracy does have as a necessary element the intention to do all of the things necessary to a completed robbery. The Attorney General points out that the possession or use of a dangerous or deadly weapon is not a necessary element of conspiracy to commit robbery, even though the intention to be armed with or to use such a weapon may be necessary to sustain a finding that an intended robbery was of the first degree.

The real problem is whether the finding of such an intention can be based upon something other than the actual possession of such a weapon by one of the conspirators.

The Attorney General presents the suppositious case of two persons who plan the robbery of a bar, in which each will wear a ski mask and carry a gun; they are overheard by someone who reports the conversation to the police; the two are kept under surveillance, are seen purchasing two ski masks and are then arrested; neither has had possession of a firearm. The Attorney General argues that all the elements are present to support a conviction of conspiracy to rob, and a finding that the intended robbery was of the first degree.

The essence of the crime of conspiracy does not require that the conspirator be armed with a deadly weapon. In that respect and to that extent, the crime of conspiracy differs from such crimes as assault with a deadly weapon or robbery of the first degree. *In re Shull,* 23 Cal.2d 745 [146 P.2d 417], and *People* v. *Floyd, supra,* 71 Cal.2d 879, do not present exactly similar situations.

When the conspiracy is to commit robbery fixed by the jury as of the first degree, the question must arise whether such a conviction could stand unless the conspirator was in fact armed with a dangerous or deadly weapon.

Conspiracy to commit a crime is rarely proved as the result of testimony as to the text of a written or oral agreement. If, as in the case

postulated by the Attorney General, there were such testimony, a question arises whether the evidence would be sufficient to sustain the fixing of the degree of the conspired robbery as first degree unless one of the overt acts committed included the procuring or having possession of a weapon.

In the case at bench, the emergence of the existence of a conspiracy was the result of a succession of events, and the degree of the conspired robbery was discovered from the fact that two of the conspirators were indeed armed. Such is the history of the discovery of most conspiracies to commit crime.

■ A conspiracy exists from the time of forming the criminal agreement until it terminates by abandonment, frustration or the achieving of the conspiracy's objective. In some cases the conspiracy is in existence for a considerable period of time. An original conspirator who does not withdraw from the conspiracy before its termination is guilty of the crime of conspiracy during the whole period of its duration. If he should at some time during that period be armed with a dangerous or deadly weapon, though the conspiracy never reaches the point of an overt attempt to commit the conspired crime, a question arises whether the minimum sentence to which he might be subject if convicted of conspiracy is to be enlarged because of that possession of a weapon.

Reasonable predictability of the result of certain conduct, and the practical demands of proof, suggest that any such enhancement of the minimum punishment be the result of being armed at the time of an overt attempt to commit the conspired crime.

■ Here defendant conspired to commit a robbery; he also attempted to commit the robbery. Quite properly he was charged with and convicted of the conspiracy.

Had he been charged with and convicted of attempted robbery, there would be present one of the two situations found in *People* v. *Floyd, supra,* 71 Cal.2d 879.

In *Floyd* the court said, at page 883:

"In *People* v. *Ford,* 60 Cal.2d 772, 794 . . ., it was held on the basis of *Shull* that the increased minimum penalty of section 3024 for being armed with a deadly weapon at the time of the offense did not apply to

convictions for possession of a concealable weapon by an ex-felon and for assault with a deadly weapon.

"The same reasoning applies to a conviction of robbery in the first degree on the basis of the fact that the defendant was armed, and sections 3024 and 12022 of the Penal Code are inapplicable. [Citations.] The special statute, section 213 of the Penal Code, fixes the penalty, and since the fact of being armed is essential to the conviction, sections 12022 and 3024 are inapplicable. Although section 664 relating to attempts is general in nature, the penalties prescribed by that statute are tied to the specific statutes providing for punishment of the crime attempted, and sections 12022 and 3024 are also inapplicable since they must be viewed in this connection as more general than the attempt statute. Moreover, to hold sections 12022 and 3024 applicable to attempts where use of a deadly weapon is an essential element of the crime attempted could cause the anomalous result that the punishment for the attempt is greater than the punishment for the crime attempted."

■ Defendant's conviction cannot be held subject to the provisions of Penal Code section 12022.5 because conspiracy is not one of the crimes enumerated therein.

To say that one convicted of conspiracy to commit first degree robbery could be subjected to the provisions of section 12022, but could not be subject to those provisions if he were convicted of successfully completing the robbery, could permit the following situation: In the case of first degree robbery committed by two or more persons as the result of a prior agreement, if one of them was armed with a deadly weapon other than a firearm and was convicted of first degree robbery he would not be subject to either section 12022 or 12022.5. But if charged and convicted of conspiracy to commit first degree robbery, his minimum punishment could be increased under section 12022.

Under Penal Code section 182, the punishment for conspiracy to commit a felony is the same as the punishment for the conspired felony. Again, it seems anomalous to permit enhancement of the minimum punishment for conspiracy to commit a felony when such enhancement is not permitted for the minimum punishment of the conspired felony, as in the example postulated.

It is true that a certain defendant convicted of conspiracy to commit a crime might be subject to a greater minimum or maximum punishment

as the result of prior felony convictions than another defendant convicted of the same substantive crime who has had no prior felony conviction, or who might be sentenced as a youthful offender. In the case at bench, if section 12022 were held applicable to the conspiracy conviction, the result would be a minimum punishment greater than could be imposed upon the same defendant if he had been convicted of the substantive offense alleged and found to have been committed within the definitions of section 12022.

For all those reasons, we hold that the minimum sentence provisions of Penal Code section 12022 do not apply to a conviction for conspiracy to commit a crime if the provisions could not apply to the conspired crime itself.

It is within the power of the Legislature to amend section 12022.5 to make it applicable to one convicted of conspiracy to commit any of the other enumerated crimes. For purposes of certainty, such an amendment might provide that the proscribed use of a firearm was in the doing of any of the alleged overt acts.

The commitment order is amended to strike the finding of use in violation of Penal Code section 12022.5, and as amended the judgment is affirmed.

Ault, Acting P. J., and Cologne, J., concurred.