[Civ. No. 50913. First Dist., Div. Two. May 21, 1981.]

KENNETH EUGENE PARNELL, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

John W. Ellery, Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey, Shirley A. Nelson and J. Robert Jibson, Deputy Attorneys General, for Real Party in Interest.

## OPINION

SMITH, J.—This is a petition for a writ of prohibition and request for stay of trial after the respondent Superior Court of the County of Merced denied petitioner Kenneth Parnell's motion to dismiss made pursuant to Penal Code section 995.[1] Trial has been stayed pending a decision on these petitions.

Petitioner contends that charges of kidnaping (§ 207), false imprisonment (§ 236) and conspiracy to commit kidnaping, false imprisonment, certain sex offenses and to contribute to the delinquency of a minor (§ 182) are either unsupported by probable cause or barred by the three-year statute of limitations. We uphold all the charges except the charge of conspiracy to commit the sex offenses.

### Factual and Procedural Background

The transcript of the preliminary hearing and Ervin Murphy's confession which was introduced at that hearing contain a description of the following events.

In 1972, Ervin Murphy was working at a lodge in Yosemite National Park as a night janitor. Sometime in the fall, petitioner came to work at the lodge as a night auditor, and the two men became acquainted. Over the following weeks and months, the two became good friends, and soon petitioner confided to Murphy that he was lonesome and wanted to acquire a son. Petitioner solicited Murphy's aid in "picking up" a child and, after some hesitation, Murphy agreed to help him. Murphy stated in his confession that petitioner gave no indication that he intended to abuse the child sexually. He stated further that he never suspected that petitioner was in any way sexually deviant.

---

[1]All references will be to the Penal Code unless otherwise indicated.

Murphy's first couple of attempts to entice children into petitioner's car were unsuccessful: the children stated that they had to go home, and Murphy let them go.

On December 4, 1972, seven-year-old Steven S. was walking home from school in Merced when he was stopped by Murphy who gave Steven some religious pamphlets and asked him if he wanted to make a donation to a church. When Steven said that his parents might want to make a donation, Murphy asked him if he wanted a ride home. At first the boy refused, but after Murphy continued talking to him and again offered a ride, he accepted. At that point, petitioner pulled up his car and opened the door for Steven. Steven testified that he climbed in the back seat of the car; according to Murphy, the boy sat in front between the two men.

Petitioner drove toward Steven's house and then passed the road where the boy lived. When Steven remarked that they had passed his road, one of the two men told him that they would call his parents and ask if he might stay the night with them. Steven replied that they might go to his house and ask, but they kept on driving until they arrived at a trailer park in Cathey's Valley, about 20 miles from Merced. The two men took the boy to a rented cabin in which they had placed toys in anticipation of their successful abduction of a child.

The two men and Steven stayed in the cabin at Cathey's Valley for a few nights, with petitioner and Steven sleeping in the cabin's one bed and Murphy sleeping on a couch. At that time, petitioner told Steven that he had gone to court and obtained custody of the child. The two men then took Steven to Yosemite National Park to the lodge where they worked. When Murphy was unavailable, petitioner gave Steven sleeping pills so that he would sleep while petitioner was at work. Petitioner also changed Steven's hair color so that he would not be recognized. In his confession, Murphy stated that he never saw any indication that petitioner was sexually abusing the child. Steven testified that he did not recall being sexually abused either in Cathey's Valley or in Yosemite.

After two or three weeks at the Yosemite Lodge, petitioner took Steven to live in Santa Rosa, leaving Murphy behind. Petitioner told the boy that he was never to tell anyone his true identity and threatened to spank him if he did. Steven testified that one night while living in Santa Rosa he tried to leave petitioner by walking away from his house, but

that he became frightened and turned back. The two remained in Santa Rosa for about three years, with Steven enrolled in school under the name of Dennis Parnell.

From Santa Rosa, petitioner took Steven to Willits and, a month later, to Fort Bragg. The year was 1975, and Steven was in the fifth grade. In September of 1976, petitioner moved to Comptche in Mendocino County, where he and the boy lived for the next three years. In August 1979, petitioner moved to Manchester.

Steven testified that commencing soon after his arrival in Santa Rosa petitioner began to commit sodomy upon his person and involved him in acts of oral copulation. Shortly before Steven's flight in 1980, petitioner was still committing these acts, although with less frequency.

While Steven scrupulously obtained petitioner's permission before leaving his presence, he nevertheless was outside of his control when he attended school and while petitioner was at work. Steven was also often cared for by babysitters. In addition, he stayed overnight at the homes of two friends "a lot of times" and once with each of two other friends. While in the sixth grade, he and sixty other students stayed in San Francisco for a number of nights. By the time he was in high school, he was making out-of-town trips as a member of the football team. Steven also had access to bicycles. He made calls to friends, would often hitchhike from school to petitioner's residence, to movies and to the homes of friends, and learned to drive petitioner's vehicle. He composed, addressed and mailed letters without the knowledge of petitioner. In Fort Bragg, he was briefly in police custody when he was caught shoplifting.

Although he was once threatened with a spanking, Steven failed to mention actual physical restraint or punishment. He has a vague recollection of stating to petitioner that he wanted to return to Merced, but he does not recall petitioner's reply, if any. In addition, he never forgot his true name or the names of his parents.

Steven stated, "I don't think I really knew what he meant" when petitioner told him he had "been to court" to obtain custody. He answered "yes" to the question "You knew did you not all along that he had you improperly?"

On February 14, 1980, Steven returned to petitioner's residence in Manchester to find that petitioner had abducted five-year-old Timmy

W. On March 1, 1980, while petitioner was at work as a night auditor, the boys hitchhiked from the cabin near Manchester to Ukiah. Steven coached Timmy on how to enter the police station to turn himself in, led him to the door and then walked away. Timmy, however, became frightened and ran after Steven. Police officers saw the younger boy run off, and radio patrol cars intercepted the two about a block from the station. When asked to identify himself, Steven replied "Steven S." He did not identify petitioner until after some amount of coaxing by police officers.

Steven testified that prior to Timmy's abduction he had thought of leaving petitioner and had made plans to do so. He stated that he often wanted to return to his parents in Merced.

On March 21, 1980, a complaint was filed in the Merced County Municipal Court charging petitioner with the following criminal violations: in count I, kidnaping in violation of Penal Code section 207; in count II, child stealing in violation of Penal Code section 278; in count III, false imprisonment in violation of Penal Code section 236; in count IV, conspiracy to commit kidnaping; in count V, conspiracy to commit child-stealing; in count VI, conspiracy to commit false imprisonment; and, in count VII, conspiracy to commit lewd and lascivious acts upon a child and oral copulation, all the conspiracy counts being in violation of Penal Code section 182.

On April 9, 10, and 17, 1980, a preliminary hearing was held, at the conclusion of which petitioner was held to answer on the following charges: kidnaping, conspiracy to commit kidnaping, false imprisonment, and conspiracy to commit false imprisonment. Petitioner was discharged as to all other counts.

On May 5, 1980, an information was filed in the Merced County Superior Court, charging petitioner as follows: in count I, kidnaping; in count II, false imprisonment; in count III, conspiracy to commit kidnaping, false imprisonment, child stealing, lewd and lascivious acts, oral copulation, sodomy, and contributing to the delinquency of a minor. These crimes were alleged to have been committed against Steven S.

On May 9, 1980, petitioner was arraigned and pleaded not guilty as charged.

On June 24, 1980, petitioner made a motion to set aside the information pursuant to Penal Code section 995, which was subsequently denied. On the same date, the charge of conspiracy to commit child stealing was stricken on motion of the district attorney.

On July 14, 1980, petitioner filed a petition for writ of prohibition in the Court of Appeal for the Fifth District.

On August 22, 1980, venue was transferred to the Superior Court of Alameda County. Subsequently, the petition for writ of prohibition was transferred to this court.

*Kidnaping Element of Forcible Taking*

■ Petitioner first argues that the kidnaping charge cannot stand because of the absence of the requisite element of "forcible taking" contained in by Penal Code section 207.[2] Petitioner stresses that neither the testimony of Steven nor the confession of Murphy indicated that force was exerted by petitioner in abducting the boy.

■ In passing upon the sufficiency of the evidence to support this as well as other charges challenged by petitioner, we are guided by the well-settled rule that "every legitimate inference that may be drawn . . . from the evidence must be drawn in favor of the information." (*Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464-465 [93 Cal.Rptr. 587, 482 P.2d 211].) "Evidence that will justify a prosecution need not be sufficient to support a conviction. An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Id.* at p. 464; cf. *People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].)

■ It is the general rule that kidnaping can only be accomplished by the threat of force or the actual use of force. (*People* v. *Green* (1980)

---

[2]Section 207 defines kidnaping in relevant part as follows: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county, . . . or who hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any person to go out of this state, . . . for the purpose . . . to sell such person into slavery . . . without the . . . consent of such person; and every person who, being out of this state, . . . takes by force or fraud any person contrary to the law of the place where such act is committed, and brings . . . such person within the limits of this state, and is afterwards found within the limits thereof, is guilty of kidnaping."

27 Cal.3d 1, 64 [164 Cal.Rptr. 1, 609 P.2d 468].) Even though the seizure of a victim is effected without force, a kidnaping conviction will still be upheld if the accused "'subsequently restrains his victim's liberty by force and compels the victim to accompany him further.'" (*People* v. *Camden* (1976) 16 Cal.3d 808, 814 [129 Cal.Rptr. 438, 548 P.2d 1110]; *People* v. *Trawick* (1947) 78 Cal.App.2d 604, 606 [178 P.2d 45].) The force used against the victim "need not be physical. The movement is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he or she fears harm or injury from the accused and such apprehension is not unreasonable under the circumstances." (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 660 [111 Cal.Rptr. 556, 517 P.2d 820]; see also *People* v. *Rhoden* (1972) 6 Cal.3d 519, 527 [99 Cal.Rptr. 751, 492 P.2d 1143].)

■ The testimony at the preliminary hearing indicates that, after Steven was fraudulently enticed into petitioner's car, both men failed to respond to the boy's statement that the car had passed his road. Petitioner and Murphy told Steven that they would call his parents to ask if the boy might spend the night with them. Steven countered: "[W]e could go down to my house and ask." The two men, however, again responded that they would call, and instead removed Steven to Cathey's Valley about twenty miles from his home. One cannot imagine a more threatening situation: A seven-year-old youngster in a moving automobile under the control of two adult strangers who twice countermanded the child's request to contact his parents. The substitution of wills, petitioner's and Murphy's, for Steven's, together with the physical and psychological confinement of the moving automobile is ample force to satisfy the "forcible taking" element of section 207.

These facts are similar to those of *People* v. *La Salle* (1980) 103 Cal.App.3d 139 [162 Cal.Rptr. 816]. In that case, the court held that, even assuming the victim had entered the defendant's car voluntarily, his failure to stop the car in order to release her when she stated that she had to go home constituted sufficient force to support the kidnaping conviction. (*Id.* at pp. 146-147.)[3]

---

[3]Our discussion of the kidnaping charge does not end here, however, for petitioner further submits that prosecution for that offense is barred by the three-year statute of limitations. The limitations issue will be discussed *post*.

It should be noted that, while we here hold the requisite force was present to support the kidnaping charge, our Supreme Court has implied that the kidnaping of a minor can be accomplished even if unaccompanied by force so long as it was done for an improper purpose, because a minor "is too young to give his legal consent to being taken

*Conspiracy Charges*

Petitioner next contends that, because there was no evidence that he and Murphy planned to use force to accomplish the abduction of the boy, the conspiracy to commit kidnaping charges cannot stand.

■ To support charges of conspiracy, a specific intent crime, there must be proof of an agreement to commit unlawful acts or lawful acts by unlawful means, accompanied by an overt act to effect the object of the agreement. (*People* v. *Horn* (1974) 12 Cal.3d 290, 296 [115 Cal. Rptr. 516, 524 P.2d 1300]; *People* v. *Mares* (1975) 51 Cal.App.3d 1013, 1020 [124 Cal.Rptr. 718].)

■ Here, Murphy admitted in his confession that he agreed with Parnell to "pick up" a child. Although no evidence was presented that petitioner and Murphy expressly discussed the use of force either to seize or to carry away their victim, it is reasonable to infer that, even assuming they did not discuss the use of force to effect a seizure, they realized that force or the threat of force would have to be used to overcome any resistance on the part of the victim. This inference of an implied agreement to use force if necessary is sufficient to uphold the conspiracy charges.

Petitioner also maintains that, because the magistrate at the preliminary hearing failed to hold him to answer for conspiracy to commit lewd and lascivious acts on a child and to commit oral copulation, and there was no evidence to support those charges, his section 995 motion should have been granted as to that portion of the information which charged him with conspiracy to violate Penal Code sections 272 (contributing to the delinquency of a minor), 286 (sodomy), 288 (lewd and lascivious acts on a child), and 288a (oral copulation).

At the time of the preliminary hearing, petitioner stood charged in count VII of the information with conspiracy to commit lewd and las-

....." (*People* v. *Oliver* (1961) 55 Cal.2d 761, 764-765 [12 Cal.Rptr. 865, 361 P.2d 593].) Here, we have a seven-year-old child confronted by two adults who in part accomplish his abduction by fraud. Steven was not informed of petitioner's intent to permanently take him from his home and, even if he knew, it is questionable whether he could have appreciated the significance of a permanent severance from his home and family. Steven's near passive conduct should not be construed as consent; rather, it more logically evidences the inability of a minor to give a knowing consent. However, as above stated, we need not rely upon the dicta in *Oliver* to support the kidnaping charge since we have found sufficient evidence of force.

civious acts upon a child and oral copulation. At the preliminary hearing, the court asked the prosecution to address the issue of the sufficiency of the evidence to support the charge of conspiracy to commit the sex crimes. When the prosecution stated that they would be repeating themselves, the court replied: "Well, if you are just going to repeat youself, don't do it, because so far you haven't convinced me." At the end of the prosecution's argument urging the court to infer the conspiracy from the fact that the boy was in fact sexually abused, the court stated: "Because of time I draw no inference." At the conclusion of the preliminary hearing, the court ruled: "I find that there is sufficient evidence to hold Defendants, both Defendants to answer on kidnaping charge, conspiracy to kidnap, false imprisonment, and conspiracy to commit that crime. The Defendants are discharged on all other counts."

An information may charge a defendant with "either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed." (§ 739; *People* v. *Superior Court* (*Grilli*) (1978) 84 Cal. App.3d 506, 510 [148 Cal.Rptr. 740].) However, the rule has developed that an information charging an offense not named in the commitment order will not be upheld unless the evidence taken by the magistrate shows that the offense was committed and that it arose out of the transaction which was the basis for commitment on a related offense. (*Pizano* v. *Superior Court* (1978) 21 Cal.3d 128, 133 [145 Cal.Rptr. 524, 577 P.2d 659]; *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241].)

A review of the transcript of the preliminary hearing compels the conclusion that the magistrate's refusal to hold petitioner to answer on the charge of conspiracy to commit the sex crimes was amply justified by the total lack of evidence that the conspiracy included the sexual abuse of the victim. In his confession, Murphy stated that no such agreement existed and, further, that he had no reason to believe that petitioner was in any way sexually deviant or that he had any sexual designs upon the child. This assertion was supported by Steven's own testimony that the first sexual abuse which he recalled occurred several weeks after his abduction, after petitioner had taken him to Santa Rosa. We therefore conclude that petitioner's section 995 motion as to these charges should have been granted.

The People maintain that petitioner's conduct shortly after the abduction is circumstantial evidence of a conspiracy to commit the sex

crimes. (See *People* v. *Lipinski* (1976) 65 Cal.App.3d 566, 575 [135 Cal.Rptr. 451].) Specifically, they point to the fact that Murphy was present when petitioner and Steven slept in the same bed, each clad in only a towel, the night after the boy's abduction. They also point out the sexual abuse which occurred several weeks after the abduction.

These facts, however, are insufficient to support the charge in question. Since the cabin held only one bed and Murphy slept on a couch, it was not unreasonable to expect that the child would sleep in the same bed as one of the men. Such an arrangement would also have been designed to prevent his escape. The fact that the child slept in a towel was also not unusual in light of the fact that no sleepwear was available for him. In addition, the People overlook the fact that the sexual abuse did not take place until after the two men had parted company.

■ The evidence adduced at the preliminary hearing, however, was sufficient to support the charge of conspiracy to contribute to the delinquency of a minor.

Section 272 in relevant part provides: "Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 18 years to come within the provisions of Sections 300, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto ... is guilty of a misdemeanor ...."

A minor becomes subject to the provisions of section 300 of the Welfare and Institutions Code by being outside his parents' care and control.[4] Evidence that the agreement between petitioner and Murphy included the removal of the child from his parents' control was clearly sufficient to support this charge.

*Statute of Limitations*

■ Petitioner next contends that prosecution on all charges is barred by the statute of limitations.

---

[4]Welfare and Institutions Code section 300, subdivision (a) in relevant part provides: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

The statute of limitations applicable to the felonies charged in the instant case bars prosecution unless an information was filed within three years of their commission. (§ 800.)[5]

In *People* v. *Zamora* (1976) 18 Cal.3d 538, 546-547 [134 Cal.Rptr. 784, 557 P.2d 75], our Supreme Court set forth the policy considerations which underlie the concept of a period of limitation: "To some extent, the concept of a period of limitation developed in recognition of the ever increasing difficulty faced by both the government and a criminal defendant in obtaining reliable evidence (or any evidence at all) as time passes following the commission of a crime. . . . [¶] . . . The possibility of self-reformation by the criminal offender may lessen the need for society to impose corrective sanctions and society's impulse for retribution may correspondingly diminish as time passes. Statutes of limitation also encourage the swift and effective enforcement of the law, hopefully producing a stronger deterrent effect. They tend to limit the chance that the first offense will spawn blackmail of the offender by others threatening disclosure—crime breeding more crime. Finally, adoption of a period of limitation represents a legislative recognition that for all but the most serious of offenses (such as murder or kidnaping) a never-ending threat of prosecution is more detrimental to the functioning of a civilized society than it is beneficial." In setting aside the convictions, the Supreme Court in *Zamora* explained: "It bears repeating that we have not done so [set aside the convictions] out of any sympathy for these defendants. Our action has been mandated by adherence to the rule that statutes of limitation are to be strictly construed in favor of the accused." (*Id.* at p. 574.)

■ Because the statute of limitations is jurisdictional, the People have the burden of supporting an information with some evidence that the prosecution is not barred by limitations. (*Id.* at p. 565, fn. 26; *People* v. *Crosby* (1962) 58 Cal.2d 713, 725 [25 Cal.Rptr. 847, 375 P.2d 839].) Where the limitations issue is raised by a motion to set aside the information, the court confronts the general rule permitting it to quash only if there is no evidence from which the essential elements of proof can be inferred. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

---

[5]Although Penal Code section 799 permits prosecution of kidnaping for ransom or robbery (§ 209) without limitation, simple kidnaping is subject to the three-year statute of limitations.

■ Here, the abduction of Steven took place seven years prior to the filing of the complaint. Since the limitation period begins to run at the time a crime is committed (§ 800), we are confronted with the issue of first impression whether kidnaping is a continuing offense, and the statute of limitations therefore does not commence to run as long as the victim is forcibly detained, or, on the other hand, whether the crime is complete upon the initial forcible taking. The resolution of this issue depends upon our construction of the definition of simple kidnaping embodied in section 207.

Section 207 states in relevant part that "[e]very person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county . . . is guilty of kidnaping."

Citing *People* v. *Bormann* (1970) 6 Cal.App.3d 292 [85 Cal.Rptr. 638], petitioner contends that the crime was completed, and the limitation period therefore began to run, on December 4, 1972, when Steven was taken and carried away from Merced.

In *Bormann,* an appellate court was faced with the issue whether a defendant who abducted a child in Mexico and subsequently transported the child to the United States might be charged with child stealing[6] under the theory that the crime was a continuing offense, thus avoiding the bar against prosecution for acts committed in other jurisdictions. The court rejected the contention that the offense was a continuing one, observing that acts of detaining and concealing were not elements of the crime. (*Id.* at p. 296.)

The application of the holding of *Bormann* to the instant case would produce an absurd result which could not have been contemplated by the Legislature when it enacted section 207. To hold that a kidnaper who releases his victim after a brief detention can be punished under section 207 but one who holds his victim prisoner for over three years can only be prosecuted for false imprisonment, a crime punishable by a maximum of three years' imprisonment and fine (§ 237), is plainly incongruous. Accordingly, we decline to follow *Bormann* and hold that the

---

[6]At that time, section 278 of the Penal Code provided: "Every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having the lawful charge of such child, is punishable by imprisonment in state prison not exceeding twenty years."

forcible detention of the victim is an implied element of the crime of kidnaping and, therefore, as long as the detention continues, the crime continues.[7]

Section 212.1 of the Model Penal Code, adopted by the American Law Institute in 1962, expressly includes the element of detention in its definition of kidnaping. Section 212.1 provides: "A person is guilty of kidnaping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully *confines another for a substantial period* in a place of isolation." (Italics added; see also *People* v. *Shirley* (1970) 10 Cal.App.3d 268, 271-272 [88 Cal.Rptr. 853]; 2 Burdick, The Law of Crime (1946) pp. 54-55.)

Our construction of section 207 is in harmony with the rules of construction embodied in Penal Code section 4 which abolishes the common law rule requiring strict construction of penal statutes and which mandates that all provisions of the Penal Code "are to be construed according to the fair import of their terms, with a view to effect its objects and promote justice."

Further, an examination of the major purposes behind the statute of limitations compels the conclusion that none of its purposes would be advanced by barring prosecution in the instant case. Since Steven was in petitioner's control until shortly before petitioner's apprehension, neither petitioner nor the prosecution will face difficulties in obtaining reliable evidence. This is not a crime where in one brief window of time the crime is committed and the perpetrator and victim go their respective ways. Rather, this is a crime of continuing force upon the person, here a minor, while parents and family are kept in a constant state of anxiety. The statute's purpose to protect those who have reformed similarly has no application to the instant case where petitioner, showing no change of heart, failed to return the child to his parents. In addition, prosecution would deter continued detention of victims; contrariwise,

---

[7]In their opposition, the People argued that the "carrying" element of section 207 renders this a continuing offense for limitations purposes. The People appeared to assert that it was not the forcible detention of Steven but his asportation from one location to another which renders this a continuing offense. Realizing the absurdity of a statutory construction which would permit prosecution where the victim is moved from place to place for more than three years but not where he is kept in confinement during the same period, at oral argument, the People advanced the argument that it is the forcible detention of the victim which renders this a continuing crime.

the barring of prosecution would encourage the detention of the victim beyond the limitations period. Finally, given the serious nature of the crime, society's interest in avenging injustice and protecting the public far outweighs its concern to protect wrongdoers from an unlimited threat of prosecution.

After a review of the record, we conclude that the kidnaping charge is supported by sufficient circumstantial evidence that Steven's detention was effected by the threat of force within the limitations period. While Steven enjoyed considerable freedom of movement and association during his last years with petitioner, it is not unreasonable to infer that the boy, who had been subjected to continual sexual abuse and taken far from his home and family, remained with petitioner out of fear. Coercion may also be implied from the fact that petitioner assumed the authority of a parent toward Steven. Having been separated for many years from the protection of his parents and made totally dependent on his abductor for his survival, the boy was particularly vulnerable to petitioner's assertion of authority and the substitution of wills. In addition, petitioner told the boy that his parents did not love him, that he had obtained legal custody, and that if he revealed his true identity he would be spanked. Taken together, these facts raise a strong inference that the child, who had been separated from his parents at the tender age of seven, remained with petitioner, not of his own free will, but out of fear induced by petitioner.

 The transcript of the preliminary hearing also contains sufficient evidence to refute petitioner's argument that the prosecution for false imprisonment is barred by the three-year statute of limitations.

False imprisonment is defined by section 236 as "the unlawful violation of the personal liberty of another." If effected by violence, menace, fraud, or deceit, as charged here, it is punishable by imprisonment in state prison for a maximum of one year. (§ 237.) "Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both." (*People* v. *Agnew* (1940) 16 Cal.2d 655, 659 [107 P.2d 601].) Consent of the victim is no defense where the consent is induced by coercion or deception or where the victim is

incapable of consenting due to unsoundness of mind or tenderness of years. (See Perkins, Criminal Law (1957) p. 131.)

As stated in our discussion of the kidnaping charge, the record contains sufficient evidence that Steven was unlawfully detained by the threat of force within the limitations period. The fact that Steven could not legally consent to his detention together with petitioner's misrepresentations to the boy further support the false imprisonment charge.

Petitioner further submits that the three-year statute of limitations bars prosecution on all conspiracy charges. Since we have previously concluded that the charge of conspiracy to commit the sex offenses is not supported by the evidence, the following discussion pertains only to the issue whether prosecution on charges of conspiracy to commit kidnaping, false imprisonment and to contribute to the delinquency of a minor is barred by the statute of limitations.

 The limitation period applicable to a conspiracy begins to run from the date of the last overt act alleged to have occurred in furtherance of the conspiracy. (*People* v. *Zamora, supra*, 18 Cal.3d 538, 548; *People* v. *Crosby, supra*, 58 Cal.2d 713, 728.) In *Zamora*, our Supreme Court held that "upon successful attainment of the substantive offense which is the primary object of the conspiracy, the period of the statute of limitations for the conspiracy begins to run at the same time as for the substantive offense itself." (*People* v. *Zamora, supra*, 18 Cal.3d at p. 560.)

Since we heretofore have concluded that prosecution for the kidnaping and false imprisonment was not barred by the statute of limitations, it follows that prosecution for the conspiracy to commit those offenses is similarly not barred.

Prosecution on the charge of conspiracy to contribute to the delinquency of a minor is similarly not barred, since the withholding of Steven from his parent's control continued to the time of his flight from petitioner's control.

Let a peremptory writ of prohibition issue restraining respondent court from taking any further action on the charge of conspiracy to commit lewd and lascivious acts, oral copulation, and sodomy. In all other respects, and particularly with regard to counts charging kidnaping, false imprisonment, conspiracy to commit kidnaping, false

imprisonment and to contribute to the delinquency of a minor, the petition is denied.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied June 19, 1981, and petitioner's application for a hearing by the Supreme Court was denied August 7, 1981. Broussard, J., did not participate therein.