Filed 12/17/21  P. v. Joseph CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN ALEXANDER JOSEPH,<br><br>Defendant and Appellant. | C089183<br><br>(Super. Ct. No. 18F1696) |

A jury convicted defendant Stephen Alexander Joseph of false imprisonment by violence or menace, criminal threats, stalking, misdemeanor child endangerment, and misdemeanor distribution of an intimate image.  The trial court sentenced defendant to five years four months in prison and issued a no-contact order that did not specify a duration.

Defendant now contends (1) three of his four convictions for false imprisonment must be reversed because they were all based on a single detention, (2) in the alternative,

1

three of the false imprisonment counts must be stayed pursuant to Penal Code section 654,[1] and (3) we must remand the matter to permit the trial court to set a duration for the no-contact order and to remove defendant's son A.J. as a protected person.

We conclude that the convictions on counts 4, 7, and 8 for false imprisonment involved a single period of detention and thus we will reverse defendant's convictions on counts 7 and 8. In addition, we will remand the matter to the trial court with direction to set the duration of the no-contact order. The judgment is otherwise affirmed.

BACKGROUND

Defendant and his spouse (hereafter "wife") were married in 2002 and had three children: daughter S.J., son A.J., and daughter E.J. Defendant verbally abused daughter S.J., and verbally and physically abused son A.J. At the time of defendant's crimes, A.J. was temporarily living with his grandmother to get away from defendant.

On the morning of February 26, 2018, wife discovered that defendant was talking to women online, which he had done for approximately one year. When she asked defendant about it, defendant put her in a chokehold for about 20 seconds and held his hand over her mouth and nose. Wife was unable to breathe and was scared defendant would kill her. When defendant released her, she ran into their bedroom, stayed there the rest of the day, and slept there that night.

The next morning, February 27, when wife tried to leave the bedroom, defendant shoved her back into the room approximately four to six times. She felt like a prisoner. Her daughter S.J. texted her while she was in the bedroom, telling her to stay in the room because defendant was getting dangerous. Wife was so scared that she stayed in the room and did not eat all day. Although she had her cellphone with her, she did not call

---

[1] Undesignated statutory references are to the Penal Code.

2

the police because defendant had threatened to blackmail or kill her if she did. She again slept in their bedroom overnight.

On the third day, February 28, wife woke up to defendant spitting water on her face and holding a hammer. He threatened to hit her and demanded that she clean the house. Defendant left the room while she got dressed, and when defendant returned, she began recording him with her cell phone. Defendant again put her in a chokehold and covered her mouth and nose so she was unable to breathe. She lifted her legs and he released her, causing her to fall to the ground. Defendant straddled her and put his hands around her neck. When she cried for help, S.J. ran into the room and hit defendant. Defendant let go of wife, told her next time she would not be so lucky, and left the room.

Wife came out of her room and cleaned the house with S.J.'s help. She then returned to her room and stayed there, packing and planning to leave defendant once and for all. After she had been in her room for a few hours, defendant, acting like nothing had happened, said they were all going to a fast-food restaurant. Wife and the daughters did not want to go, but defendant insisted, so they all went in the car together. They ordered food at the drive-through.

When they returned home, defendant pushed wife up against the kitchen wall with his chest and told her he was in charge and that she must submit to him. He pressed her against the wall for approximately two minutes and wife felt she could not leave. In the past, wife had acquiesced to defendant's demands to submit, but this time she said she wanted a divorce. Defendant became angry, threatened to call the police, and left the house.

Wife recognized defendant's exit as her opportunity to leave him. She drove to get a storage unit while her daughters packed. Defendant returned home while wife was gone, saw some clothes were missing, and "flipped out." When wife came home and saw defendant, she called the police.

3

Wife left the home with her daughters and moved into her grandmother's garage. While they lived there, defendant text messaged and called wife hundreds of times and drove by the grandmother's house multiple times. He threatened to hurt himself and take the children if wife did not return. Defendant also falsely reported wife's disability claims as fraudulent and sent nude photos of wife to her brothers and sisters. Wife again reported defendant to the police.

At trial, defendant moved to dismiss three of the four false imprisonment counts pursuant to section 1118.1.[2] The trial court denied the motion, finding there was sufficient evidence for each count to go to the jury. The trial court further noted that defendant's argument regarding the separate false imprisonment counts might be addressed at sentencing, referencing section 654.

The jury convicted defendant of stalking wife (§ 646.9, subd. (a) -- count 1), misdemeanor distribution of an intimate image (§ 647, subd. (j)(4)(A) -- count 2), false imprisonment by violence or menace (§ 236 -- counts 4, 7, 8, and 10), criminal threats (§ 422 -- counts 6 and 12), and misdemeanor child endangerment (§ 273a, subd. (b) -- counts 11 and 19).

At sentencing, there was no discussion of section 654. The trial court sentenced defendant to an aggregate five years four months in prison, consisting of the following: the lower term of one year four months for stalking, plus a consecutive eight months (one-third the midterm) on each of the four counts of false imprisonment and each of the

---

[2] Section 1118.1 provides in relevant part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

two criminal threats counts, along with a concurrent 180 days in jail for the misdemeanor distribution of an intimate image and the two counts of child endangerment.

Prior to trial, the trial court issued protective orders pursuant to section 136.2, subdivision (a) for wife and the children.[3]  At sentencing, the trial court ordered defendant to have no contact with wife and the children.  It did not cite a statutory basis for the no-contact order or set a duration.

## DISCUSSION

## I

Defendant argues we must reverse three of the four false imprisonment convictions because they were all part of one continuing offense.  He claims he confined wife from February 27, her second day in the bedroom, until he left the house on February 28 after pushing wife against the wall.  The People counter that each count of false imprisonment constituted a separate detention and thus a separate crime.  We will reverse the convictions on counts 7 and 8.

False imprisonment is the "unlawful violation of the personal liberty of another." (§ 236.)  It occurs when a victim is compelled to remain where they do not wish to remain, or to go where they do not wish to go.  (*People v. Reed* (2000) 78 Cal.App.4th 274, 280.)  False imprisonment is a felony if it is effected by violence or menace.  (§ 237, subd. (a).)  In this context, violence means the exercise of physical force over and above the force reasonably necessary to effect the restraint, and menace is an express or implied threat of harm.  (*Reed*, at p. 280.)  False imprisonment continues as long as the defendant detains the victim.  (*Parnell v. Superior Court* (1981) 119 Cal.App.3d 392, 407-410.)

"In determining whether the evidence was sufficient either to sustain a conviction or to support the denial of a [motion for judgment of acquittal], the standard of review is

---

[3]  Section 136.2, subdivision (a) authorizes orders to protect victims and witnesses from harm, harassment, or intimidation prior to a defendant's conviction.

5

essentially the same. [Citation.] ' "[W]e do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182-1183, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

By the time the matter went to the jury, the written charges had been amended to allege that the false imprisonment alleged in count 4 occurred on February 27, and the false imprisonment alleged in counts 7, 8 and 10 occurred on February 28. The prosecution elaborated on that at closing. According to the prosecutor, count 4 occurred on the second day, February 27, when defendant repeatedly shoved wife back into the bedroom; count 7 occurred on the third day (February 28), when defendant put wife in a chokehold after she got dressed; count 8 occurred immediately after defendant released wife from the chokehold, when he climbed on top of her and grabbed her neck; and count 10 occurred the same day when defendant pinned wife against the wall after they returned from the fast-food restaurant.

We conclude there is not substantial evidence to support separate counts of false imprisonment for counts 4, 7, and 8. Specifically, those three counts occurred while defendant had wife trapped in her bedroom through menace and violence. Wife tried to escape her bedroom on February 27, but defendant shoved her back in the room each time she tried to leave. She felt like a prisoner. Wife did not leave her room, eat, or call the police, because she was fearful of defendant's threats. She stayed in the bedroom overnight, until defendant violently woke her up the next morning, threatened to hurt her, and demanded she clean the house. Scared by defendant's threats, wife got dressed to clean the house. Defendant then returned to the room and put wife in a chokehold. When she fell to the floor, he climbed on top of her and put his hands on her neck. At no time during the course of events could a jury reasonably infer that the detention ended

6

and the wife had reached a temporary place of safety. Rather, defendant, through threats and violence, compelled wife to stay in her room against her will for the entire timeframe. Thus, because defendant continuously detained wife throughout the occurrence of counts 4, 7, and 8, those three counts are part of a single period of false imprisonment and counts 7 and 8 must be stricken.

However, there was substantial evidence from which a jury could reasonably infer that there was a break in wife's detention prior to count 10. When wife and her daughters went to the fast-food restaurant with defendant, she left the bedroom and her home and went in the car with her family. They drove to a public place, sat in the car while wife's family ate, and then drove home. Everyone acted normal during the outing. But when they returned home, defendant pinned wife against the wall, detaining her again. Thus, a reasonable jury could find the trip to the fast-food restaurant, after defendant initially detained wife in their home and before he held her against the wall, constituted a break in detention. Defendant was therefore properly convicted on count 10 as a separate offense.

II

Defendant asserts in the alternative that if we conclude three counts of false imprisonment should not be stricken, we should stay the sentences on those counts under section 654 because they were all part of an indivisible transaction during which defendant harbored a single intent and objective. However, because we will reverse the convictions on counts 7 and 8, we consider only whether the trial court should have stayed sentence on count 10. We conclude the trial court's decision to issue a consecutive sentence for count 10 is supported by substantial evidence.

Section 654 prohibits multiple punishments for an indivisible course of conduct. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) Whether conduct is divisible depends upon the intent and objective of the defendant. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) However, "multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm.

7

[Citations.] 'Separate sentencing is permitted for offenses that are divisible in time . . . .' " (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.)

Whether defendant harbored a single intent is a factual determination made by the trial court. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) On appeal, the trial court's factual determination, implicit or explicit, must be sustained if supported by substantial evidence. (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1296.)

Here, defendant had a chance to reflect between the time he falsely imprisoned wife at home and, after the fast-food outing, falsely imprisoned her against the wall. Because defendant's offenses were divisible in time, and defendant had the opportunity to reflect between offenses, substantial evidence supports the trial court's implicit finding that section 654 did not apply. (See, e.g., *People v. Surdi* (1995) 35 Cal.App.4th 685, 688-690 [several stabbing episodes of a victim "separated by considerable periods of time during which reflection was possible" precludes application of section 654]; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252-1257 [multiple entries into victim's residence constituted a course of conduct divisible in time that could be separately punished under section 654].)

### III

In addition, defendant argues the matter must be remanded to the trial court to give it an opportunity to set the duration of the no-contact order and remove son A.J. as a protected person. While defendant concedes he failed to object to the no-contact order at sentencing, he contends the omission does not bar his challenge because a no-contact order of unlimited duration is unauthorized, and A.J. was not a victim of, or witness to, the crimes. The People agree that the matter should be remanded to permit the trial court to set a duration for the no-contact order, but argue defendant forfeited his challenge as to A.J. because the no-contact order is authorized under sections 646.9 and 136.2, subdivision (i).

8

The trial court orally pronounced the no-contact order for wife and the children at sentencing and defendant did not object. "As a general rule, an appellant [forfeits] issues on appeal that he or she did not initially raise in the trial court. [Citation.] But there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction." (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381.)

We begin by noting that the trial court had authority to protect A.J. under section 136.2, subdivision (i)(1), which allows for protective orders of up to 10 years where, as here, the defendant was found guilty of a crime involving domestic violence and "the protected person qualifies as a 'victim.' " (*People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 466.) "Victim" is defined as any "person with respect to whom there is reason to believe that any crime . . . is being *or has been* perpetrated or attempted to be perpetrated." (§ 136, subd. (3), italics added.)

In this context, "victim" is broadly construed "to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household." (*People v. Race* (2017) 18 Cal.App.5th 211, 219.) In "considering the issuance of a criminal protective order, a court is not limited to considering the facts underlying the offenses of which the defendant finds himself convicted . . . . Rather, in determining whether to issue a criminal protective order pursuant to section 136.2, a court may consider all competent evidence before it." (*Id.* at p. 220.)

Although A.J. was not the victim of the crimes for which defendant was convicted, and A.J. was not present for those crimes, the trial court heard ample evidence of the harm defendant inflicted upon A.J. There is sufficient evidence on which to conclude that defendant harmed A.J. through his multiple acts of emotional and physical abuse. This case is therefore distinguishable from *People v. Delarosarauda* (2014) 227 Cal.App.4th 205, relied upon by defendant, in which there was no "evidence from

9

which the trial court could reasonably conclude [the defendant] had harmed or attempted to harm [the children]." (*Id.* at p. 212.)

Nevertheless, as the parties agree, the trial court must set the duration of the no-contact order. (§§ 136.2, subd. (i), 646.9, subd. (k); see *People v. Robertson* (2012) 208 Cal.App.4th 965, 996.) We will remand the matter to the trial court for that purpose.

## DISPOSITION

Defendant's convictions for false imprisonment on counts 7 and 8 are reversed. The judgment is otherwise affirmed. The matter is remanded to the trial court with direction to set the duration of the no-contact order.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
KRAUSE, J.