[No. S101922. Dec. 16, 2002.]

In re MICHELE D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
MICHELE D., Defendant and Appellant.

## COUNSEL

Jeralyn Keller, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Carol Wendelin Pollack and Pamela C. Hamanaka, Assistant Attorneys General, Chung L. Mar, Victoria B. Wilson and Jennifer A. Jadovitz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORENO, J.**—Penal Code section 207, subdivision (a) provides: "Every person who forcibly, or by any other means of instilling fear, steals, or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." We granted review to resolve the issue of what quantum of force, if any, must be shown to sustain a conviction for kidnapping when the victim is an unresisting infant or child. We conclude that the amount of force required to kidnap an unresisting infant or child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent.

### FACTUAL AND PROCEDURAL HISTORY

In March, 2000, Michele D. (hereafter minor), then 15 years old, was invited by her friend, Dawn S., to live with Dawn's family, which included Dawn's 12-month-old daughter, Cameron. Minor and Dawn had become acquainted nearly a year earlier. Minor's home life had been a deeply troubled one, and Dawn, who had experienced her own difficulties while growing up, felt empathetic towards her. Minor was pregnant when she moved in with Dawn's family, but in early March she suffered a miscarriage.

On March 16, 2000, minor, Dawn, and Cameron took a bus to Pic 'N' Save in West Covina to do some shopping. They arrived at the store at around 5:30 p.m. Cameron was in a stroller, which both Dawn and minor took turns pushing. Minor was still bleeding heavily from her miscarriage and appeared to Dawn to be disturbed, emotionally hurt, and tearful. Once inside the store, the two women separated, with minor taking Cameron. After about an hour they ran into each other. Minor asked Dawn if she would pay for some toothpaste and mouthwash for minor. Dawn agreed. Minor went to get the items, still pushing Cameron in her stroller.

When minor failed to return after an hour, Dawn became concerned and went looking for her. She found Cameron's empty stroller abandoned in the middle of an aisle. Inside the stroller were minor's purse and a baby bottle. Dawn went to the store's information booth and asked if anyone had seen minor. No one had. Dawn had not given minor permission to take Cameron from the store and panicked. While she tried to reach her husband, someone from Pic 'N' Save called the police. Dawn's husband and a West Covina police officer, Detective Michael Ferrari, both arrived at Pic 'N' Save. Dawn and her husband followed Ferrari to the West Covina police station.

Meanwhile, James Lynch, who worked for Penske Jaguar, located approximately a mile and a half from Pic 'N' Save, was preparing to leave work. It was now about 7:00 p.m. He noticed a woman with a baby. She was walking down the street into an area to which only employees had access. Lynch notified the dealership's security guard, Edward Anaya, Jr.

Anaya found minor and Cameron in front of the dealership. He expressed his concern that she had been observed behind the dealership in a dark alleyway that was off-limits to nonemployees. Minor told him she was just trying to get a ride to Fullerton. He noticed her eyes were red, as if she had been crying, and she seemed upset. Anaya thought she might be a victim of domestic violence and took her into the dealership to talk to her and see if he could help her. Ultimately, Anaya called the police.

Detective Ferrari was notified of Anaya's call while en route to the police station. Ferrari continued to the police station, where he met Dawn, who then rode with him to Penske Jaguar. Dawn identified minor and took custody of Cameron. Cameron was taken to a hospital where she was examined and found to be uninjured.

Ferrari arrested minor and drove her to the police station. Minor waived her rights and spoke to Ferrari. She said that before leaving Pic 'N' Save, she had told Dawn she was going outside to smoke and asked Dawn for money to buy a drink. She said Dawn gave her money and asked that she take Cameron outside with her. She told Ferrari she went outside, smoked a cigarette, and then boarded a bus with Cameron. Initially, she told Ferrari she was babysitting Cameron, but then admitted that she took Cameron with the hope she could raise the child herself. Ferrari observed that minor was very emotional during the interview, her moods alternating between anger, confusion, and inattentiveness.

On March 20, 2000, a petition was filed pursuant to Welfare and Institutions Code section 602 alleging that minor had violated Penal Code section 207, subdivision (a) by kidnapping Cameron.[1] It was further alleged, pursuant to Penal Code section 667.85, that the victim was under the age of 14 and had been kidnapped and carried away with intent to permanently deprive her parent of custody.[2]

At the hearing on the petition, the defense presented the testimony of Dr. Haig Kojian, a court-appointed forensic evaluator. Dr. Kojian reviewed

---

[1] A second count alleged the identical offense and was later dismissed as duplicative at the People's request.

[2] Penal Code section 667.85 provides: "Any person convicted of a violation of Section 207 or 209, who kidnapped or carried away any child under the age of 14 years with the intent to

minor's arrest report, the probation officer's report, and minor's medical records. He also interviewed minor. Additionally, after he submitted his report, he viewed her videotaped interrogation with Detective Ferrari. Dr. Kojian concluded that at the time of the incident, minor was suffering from depression and mood disorder. He attributed her depression to her miscarriage and a chronic history of emotional instability. Dr. Kojian also diagnosed minor as a substance abuser, but, because she was not under the influence of any substances at the time of the incident, ruled out substance abuse as a factor in her conduct.

The juvenile court sustained the petition and found the special allegation to be true. The court recommended that minor be confined at Penny Lane, a juvenile facility with special expertise in counseling troubled adolescents. Her maximum period of confinement was set at 13 years.

Minor appealed the order sustaining the petition. In the Court of Appeal, minor argued that the absence of any proof she had forcibly seized Cameron rendered the evidence insufficient to support her conviction.

The Court of Appeal acknowledged the general rule that "to sustain a conviction for kidnapping, the prosecution is required to prove the perpetrator used force or fear." However, the Court of Appeal held "that the abduction of a non-resisting infant or child without the knowledge or permission of the parent constitutes kidnapping. The fact that 'force' as commonly used to mean the application of physical strength, violence, compulsion, or constraint, was not utilized does not alter this conclusion." The Court of Appeal based its conclusion "upon common sense, the promotion of justice and the presumed intent of the Legislature," finding it "to be inconceivable that the Legislature intended the physical taking of an infant in the manner described in these facts not to be the crime of kidnapping." We granted minor's petition for review.

## DISCUSSION

 Minor reiterates the argument she made below, that the word "force," as used in the kidnapping statute (Pen. Code, § 207 (hereafter section 207)), means a forcible seizure and this, in turn, requires something more than the mere quantum of physical force necessary to effect movement. Acknowledging that there is no definition of force for kidnapping in case law, she argues that the statute, originally enacted in 1872, was a codification of the common law crime, which required the forcible abduction of a

permanently deprive the parent or legal guardian [of] custody of that child, shall be punished by imprisonment in the state prison for an additional five years."

person from his or her own country into another. She points out that the force requirement has remained unmodified in the intervening time and case law uniformly enunciates the requirement that "force or fear [is] a necessary element of kidnaping . . . ." (*People v. Alcala* (1984) 36 Cal.3d 604, 621 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People v. Camden* (1976) 16 Cal.3d 808, 813-814 [129 Cal.Rptr. 438, 548 P.2d 1110]; *People v. Stanworth* (1974) 11 Cal.3d 588, 602 [114 Cal.Rptr. 250, 522 P.2d 1058].) Finally, she relies on interpretations of the force requirement in the contemporaneously enacted robbery statute (Pen. Code, § 211), which has been construed to require "a quantum more than that which is needed merely to take the property from the person of the victim . . . ." (*People v. Wright* (1996) 52 Cal.App.4th 203, 210 [59 Cal.Rptr.2d 316].)

We agree that ordinarily the force element in section 207 requires something more than the quantum of physical force necessary to effect movement of the victim from one location to another. The conjoining of force with fear in section 207—"[e]very person who forcibly, or by any other means of instilling fear"—suggests as much. We conclude, however, that minor's conduct falls within the ambit of the statute. Even if force, as conventionally understood, was not used to effect Cameron's kidnapping, the minor's intent in carrying off the infant still renders her conduct kidnapping.

Principles of statutory construction and the application of those principles to the kidnapping statute in an analogous case, *People v. Oliver* (1961) 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593] (*Oliver*), support this conclusion. ■ In general, it is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the Legislature did not intend. To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) ■ The fact that the Legislature may not have considered every factual permutation of kidnapping, including the carrying off of an unresisting infant, does not mean the Legislature did not intend for the statute to reach that conduct. This is a core teaching of *Oliver*, which, like the case now before us, required us to use these principles of statutory construction to resolve the issue of whether section 207 applied to an analogous factual situation its language did not appear to reach.

In *Oliver*, defendant was convicted of lewd and lascivious conduct with a two-year-old child and also of kidnapping the child. (*Oliver, supra,* 55 Cal.2d 761, 763.) With respect to the kidnapping count, the jury was instructed that " 'there must be a carrying, or otherwise forcible moving, for

some distance of the person who, against his will, is stolen or taken into the custody or control of another person. . . .' " (*Id.* at p. 764.) The facts showed, however, that "the baby went willingly with defendant." (*Ibid.*)

Thus, in *Oliver*, we confronted, as we do in the present case, the problem of the kidnapping statute's force requirement in the case of an infant who is incapable of giving legal consent. We said: "It is . . . true that the forcible moving of a person against his will, where such person is capable of giving consent, is kidnaping under Penal Code, section 207, without more, and '[t]he purpose or motive of the taking and carrying away [is] immaterial in prosecutions for kidnaping.' [Citations.] Counsel for defendant argues that the application of this rule to the case of a child too young to give legal consent 'could result in the conviction . . . of persons who merely escort a small child from point A to point B without a wrongful or any purpose.' There is much force to this argument. Many situations readily suggest themselves under which a minor, unable to give his consent because of his immature years, might be forcibly taken and transported by an adult for a good or innocuous purpose, and in which it would be unthinkable that the adult should be held guilty of kidnaping." (*Oliver, supra,* 55 Cal.2d at p. 765.)

Confronted with the possibility that a literal reading of the statute would render an injustice, we observed in *Oliver* that "[t]he courts are not powerless to read exceptions into the law when confronted by a criminal statute which literally interpreted would lead to the conviction of crime in cases to which it is obvious that the Legislature cannot have intended the statute to apply." (*Oliver, supra,* 55 Cal.2d at p. 766.) " ' "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." ' " (*Id.* at p. 767.)

Application of these principles of statutory construction required us, in *Oliver*, to construe section 207 "as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto, . . . [to constitute] kidnaping only if the taking and carrying away is done for an illegal purpose or with an illegal intent." (*Oliver, supra,* 55 Cal.2d at p. 768.) Since we concluded that the evidence in *Oliver* did not support a finding that the child was taken for an illegal purpose, we reversed defendant's kidnapping conviction. (*Ibid.*)

The principles of statutory construction set forth in *Oliver* apply with equal force to the instant case. The difference is that, whereas in *Oliver* we

were concerned that a literal construction of the statute might lead to wrongful convictions, in this case a literal construction of the statute might result in the absurd consequence of finding that a kidnapping did not occur where it is clear a kidnapping was intended. Minor removed Cameron from her stroller with the intention of taking her away and raising her as her own child. Like the Court of Appeal in the present case, "we find it inconceivable that the Legislature intended the physical taking of an infant in the manner described in these facts not to be the crime of kidnapping. In fact, we believe the taking of an infant or child in this manner is the prime example of kidnapping and is clearly intended to be within its scope."

*Oliver* stands for more than the articulation of relevant principles of statutory construction; it also has substantive significance on the very question before us. In dicta, a pair of Court of Appeal opinions have construed *Oliver* to stand for the proposition that the force requirement, like the consent requirement, is relaxed or eliminated in a kidnapping that involves an infant or small child. In *Parnell v. Superior Court* (1981) 119 Cal.App.3d 392 [173 Cal.Rptr. 906], the defendant argued that the trial court erroneously denied his motion to set aside a kidnapping charge because there was no evidence of forcible taking of the victim, a seven-year-old boy. The Court of Appeal rejected his claim, citing evidence that the defendant and his confederate had fraudulently induced the boy to enter his automobile and then twice countermanded the child's request to see his parents. In a footnote, the *Parnell* court stated: "It should be noted that, while we here hold the requisite force was present to support the kidnaping charge, our Supreme Court has implied that the kidnaping of a minor can be accomplished even if unaccompanied by force so long as it was done for an improper purpose, because a minor 'is too young to give his legal consent to being taken . . . .'" (*Id.* at pp. 402-403, fn. 3, quoting *Oliver, supra*, 55 Cal.2d at pp. 764-765.)

In *People v. Rios* (1986) 177 Cal.App.3d 445 [222 Cal.Rptr. 913], the defendant abducted his minor daughter and was convicted of false imprisonment. He argued that the evidence was insufficient to support the conviction because there was no evidence of force, menace, fraud, or deceit committed against the victim, as required by the false imprisonment statute. (Pen. Code, §§ 236, 237, subd. (a).) In rejecting this claim, the Court of Appeal held that the statute did not require proof that any of these actions were directed against the victim, only that the false imprisonment was "effected" by one of them. (*People v. Rios, supra*, 177 Cal.App.3d at p. 452.) In support of this interpretation of the false imprisonment statute, the Court of Appeal observed: "[O]ur interpretation of the statute is more in keeping with the policy of the law in these kinds of cases. In *People v. Oliver*[,

*supra*,] (1961) 55 Cal.2d 761 . . . , our Supreme Court indicated that in kidnapping cases the requirement of force may be relaxed where the victim is a minor who is 'too young to give his legal consent to being taken' and the kidnapping was done for an improper purpose. [Citations.]" (*People v. Rios*, *supra*, 177 Cal.App.3d at p. 451.)

Neither *Parnell* nor *Rios* explained precisely where in *Oliver* we suggested that the force requirement should be eliminated or relaxed where the victim is an infant or small child. Indeed, at several points in the *Oliver* opinion, we use the word "forcible" to describe the taking and carrying away of a kidnap victim. (*Oliver, supra,* 55 Cal.2d at pp. 765-768.) Nonetheless, the *Parnell-Rios* construction of *Oliver* has merit because the consent and force elements of kidnapping are clearly intertwined. (*People v. Moya* (1992) 4 Cal.App.4th 912, 916 [6 Cal.Rptr.2d 323] ["If a person's free will was not overborne by the use of force or the threat of force, there was no kidnapping"].) If, as we observed in *Oliver*, the child victim went "willingly" with defendant, the implication is that force was not used against him. Thus, our holding in *Oliver*—that, where the victim by reason of youth or mental incapacity can neither give nor withhold consent, kidnapping is established by proof that the victim was taken for an improper purpose or improper intent—was reasonably extended in *Parnell* and *Rios* to encompass situations in which, because of the victim's youth, there is no evidence the victim's will was overcome by force.

*People v. Hill* (2000) 23 Cal.4th 853 [98 Cal.Rptr.2d 254, 3 P.3d 898] (*Hill*), signaled our agreement with the interpretation of *Oliver* presented in *Parnell* and *Rios*. In *Hill*, the defendant was convicted of various crimes including carjacking and kidnapping of both the adult victim and her seven-month-old child. In the Court of Appeal, defendant had argued that the evidence did not support his convictions of carjacking and kidnapping the infant because there was insufficient evidence he acted against her will and by means of force or fear. The Court of Appeal reversed the carjacking conviction but affirmed the kidnapping conviction. In reliance on *Oliver*, the Court of Appeal rejected defendant's argument with respect to his kidnapping conviction that there was insufficient evidence he had acted against her will or by use of force or fear. We granted review to decide "whether sufficient evidence supported the carjacking and kidnapping convictions as to the infant victim." (*Id.* at p. 856.)

Addressing defendant's claim that the Court of Appeal had misapplied *Oliver* because, he argued, *Oliver* did not eliminate section 207's requirement of force or fear even as to a child, we said: "We need not, and do not,

decide whether, or to what extent, the *Oliver* decision eliminated the need to show as to a child force or fear in addition to an illegal purpose, or whether the illegal purpose itself establishes force or fear (see *Parnell v. Superior Court*[, *supra*,] 119 Cal.App.3d 392, 402-403, fn. 3 . . .), for here ample evidence of force or fear exists. . . . *At the least*, our decision in *Oliver* 'indicated that in kidnapping cases the requirement of force may be relaxed where the victim is a minor who is "too young to give his legal consent to being taken" and the kidnapping was done for an improper purpose.' (*People v. Rios*[, *supra*,] 177 Cal.App.3d 445, 451 . . . , citing *Oliver, supra,* 55 Cal.2d at pp. 764-766.) Here, defendant snatched the baby as well as the mother. The baby certainly did not move herself. . . . We are unaware of any authority that to suffer kidnapping, a baby must apprehend any force used against her." (*Hill, supra,* 23 Cal.4th at pp. 857-858, italics added.)

Our citation in *Hill* to *Rios* indicates, minimally, our agreement with the view that infants and young children are in a different position vis-à-vis the force requirement for kidnapping than those who can apprehend the force being used against them and resist it. This view is also consistent with our decision in *Oliver*. That said, it remains true that no California case has yet defined the quantum of force necessary to establish the force element of kidnapping in the case of an infant or small child.[3] We formulate that standard as follows: the amount of force required to kidnap an unresisting infant or child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent.

■ At oral argument, the Attorney General contended that the prosecutor need not prove, in its case-in-chief, an "illegal purpose or intent" in the

---

[3]Our research has revealed a single decision that considered the quantum of force required to effect a kidnapping of an infant, and it reached the same conclusion as we reach here. (*Stancil v. Maryland* (1989) 78 Md.App. 376, 386 [553 A.2d 268, 273].) In *Stancil*, the defendant was convicted of kidnapping a 20-day-old baby from a hospital where the baby was being treated for pneumonia. Defendant appealed, arguing that the evidence was insufficient to sustain her conviction because the Maryland kidnapping statute required evidence of either forcible or fraudulent taking or carrying away of a child under the age of 16; there was no allegation of fraudulent taking and defendant contended there was no evidence of force. It was undisputed that defendant had simply removed the child from his hospital bed. Nonetheless, the appellate court rejected defendant's argument: "Kidnapping a child may be accomplished by a minimal amount of force and each case will depend upon the particular facts of the taking." (*Id.* at p. 385 [553 A.2d at p. 272].) The court explained, "If we were to follow appellant's reasoning to its logical end, children, incompetents, physically handicapped and the unconscious would not be protected by the statute if they did not resist in any manner or smiled as they were taken from their beds. It would ill serve the law to exclude as kidnappers those who prey on persons who cannot resist." (*Id.* at p. 386 [553 A.2d at p. 273].) We echo that sentiment here.

kidnapping of an unresisting infant or child. Instead, the Attorney General argued that a prosecutor need only prove that the infant was moved; lack of illegal purpose or intent should be raised only as an affirmative defense to kidnapping, under section 207, subdivision (e)(1).[4] We do not adopt this position, because it is inconsistent with our case law discussing kidnapping in the context of an unresisting infant or child. In addition, we find that subdivision (e)(1) is a limited affirmative defense; it is not sufficiently broad to protect all defendants who innocently moved an unresisting infant or child, and therefore the adoption of this subdivision did not abrogate the long-recognized requirement that a person who kidnaps an unresisting infant or child have an illegal purpose or intent.

As discussed above, in *Oliver* we held that in the case of the kidnapping of an unresisting infant, it was necessary to prove that the defendant harbored an illegal purpose or intent so that individuals with lawful intentions could not be convicted of kidnapping. As we stated: "Penal Code, section 207, as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto, should . . . be construed as making the one so acting guilty of kidnaping *only if the taking and carrying away is done for an illegal purpose or with an illegal intent.*" (*Oliver, supra,* 55 Cal.2d at p. 768, italics added.) We reaffirmed the "illegal purpose or intent" requirement in *Hill.* We began by noting that in *Oliver* "we found the against-the-will requirement satisfied as to a person unable to give legal consent if the criminal act 'is done for an illegal purpose or with an illegal intent.' We believe an analogous rule is appropriate for carjacking." (*Hill, supra,* 23 Cal.4th at p. 855.) We determined that *Oliver*'s requirement of an illegal intent or purpose was satisfied by the facts in *Hill.* (*Id.* at p. 858.)

In *Hill,* we addressed section 207, subdivision (e)(1), which was adopted by the Legislature in 1990. We merely noted that "[b]ecause defendant clearly acted with an illegal intent, we, like the court in *People v. Ojeda-Parra* (1992) 7 Cal.App.4th 46, 50, footnote 3 [8 Cal.Rptr.2d 634], 'express no opinion on whether, as to a child, the existence of an unlawful purpose remains an element of the offense or whether the purpose of protecting the child is an affirmative defense. [Citation.]'" (*Hill, supra,* 23 Cal.4th at p. 858, fn. 4.) We did not need to decide in *Hill* whether having an illegal purpose or intent remained an element of the offense because, in that case, we found that that there was ample evidence of force or fear, which is the traditional requirement for a charge of kidnapping. (*Id.* at p. 857.)

---

[4]Subdivision (e)(1) states that the kidnapping statute does not apply "[t]o any person who steals, takes, entices away, detains, conceals, or harbors any child under the age of 14 years, if that act is taken to protect the child from danger of imminent harm."

In the present case, however, we hold that the only force required to kidnap an unresisting infant or child is the amount necessary to move the victim a substantial distance. Unless we recognize that the victim must be moved for an illegal purpose or with an illegal intent, every time a person picks up and moves a child, he or she could be charged with kidnapping. That is why in *Oliver*, faced with these same concerns, we held that an individual could be guilty of kidnapping an unresisting infant or child "*only* if the taking and carrying away is done for an illegal purpose or with an illegal intent." (*Oliver, supra*, 55 Cal.2d at p. 768, italics added.)

Section 207, subdivision (e)(1) does not overrule the "illegal purpose or intent" requirement that we recognized since *Oliver*, because it is not inconsistent with this requirement. The only defense provided by subdivision (e)(1) is for a defendant who has taken a child who is in "danger of imminent harm." In the case of the kidnapping of an infant, a prosecutor must prove, as part of the case-in-chief, that the defendant moved the child for an illegal purpose or with an illegal intent. Subdivision (e)(1) allows a defendant to assert that despite an illegal purpose (such as taking the child away from his or her parents) the child was taken because he or she was in danger of imminent harm, i.e., the parents abused or neglected the child.

More important, section 207, subdivision (e)(1) did not abrogate the "illegal purpose or intent" requirement we set forth in *Oliver* because this subdivision is too underinclusive. Were we to overrule *Oliver* and conclude that section 207 contains no "illegal purpose or intent" requirement, subdivision (e)(1) would be the only recourse for a defendant who moved a child for a lawful purpose. The only individuals who would be able to assert an affirmative defense to a charge of kidnapping an unresisting infant or child would be those who took the infant or child in order to protect him or her from imminent harm. This subdivision would not provide an affirmative defense for a sibling who takes a child to the park, or for a babysitter who picks up the wrong child from school by mistake. In these cases, there is no "imminent harm" to the child—the only affirmative defense recognized by subdivision (e)(1). In order to provide a limiting principle so that individuals with such innocuous purposes cannot be charged under the kidnapping statute, it is essential to affirm our decision in *Oliver* that the "illegal purpose or intent" requirement constitutes an element of the offense when the victim is an unresisting infant or child.[5]

---

[5]We note that our decision here affects only a narrow class of cases in which an unresisting infant or small child is taken away without any force or fear. In the typical kidnapping case, the prosecutor must prove that there was force or fear, and does not need to show an illegal purpose or intent.

█ Minor argues that we should not eliminate or relax the force element in the case of infants and small children because doing so would improperly infringe upon what has traditionally been a question for the trier of fact. Our discussion of principles of statutory construction in *Oliver* is sufficient answer to this objection. *Oliver* expressly modified the consent requirement in such cases, and implied that a relaxation of the force requirement might also be necessary to effectuate the purpose of the statute. We do no more than that. Our duty is to construe the statute in a manner that avoids the absurd consequence of allowing a defendant who carries off an infant or small child under circumstances similar to those in the present case to escape liability. The trier of fact will still have to make the ultimate determination based on the totality of the evidence whether a kidnapping has been proved beyond a reasonable doubt.

Minor also argues that we should not relax the force requirement because the Legislature had the opportunity to do so but declined. She asserts that the Legislature's failure to adopt provisions of the Model Penal Code eliminating the force requirement for kidnapping where the victim was 14 years old or younger, and its failure to enact a 1989 amendment to section 207 also eliminating force where the victim is 14 or younger, evince a legislative intent to maintain the force requirement where the victim is a child. Her argument is not compelling. Both the Model Penal Code provisions and the 1989 amendment did considerably more than merely relax or eliminate the force requirement and there could have been any number of reasons the Legislature declined to enact them. The 1989 amendment was particularly controversial because, in addition to omitting any mention of force, it also eliminated the asportation requirement. We cannot therefore draw from the Legislature's failure to enact these sections the conclusion that it has rejected any relaxation of the force requirement in cases involving infants and small children. (See *People v. Escobar* (1992) 3 Cal.4th 740, 751 [12 Cal.Rptr.2d 586, 837 P.2d 1100] [" ' "Legislative inaction is 'a weak reed upon which to lean' " ' " in ascertaining legislative intent].)

█ Finally, minor argues that her conduct did not constitute kidnapping but, at most, was child abduction under Penal Code section 278. That section provides: "Every person, not having a right to custody, who maliciously takes, entices away, keeps, withholds, or conceals any child with the intent to detain or conceal that child from a lawful custodian shall be punished by imprisonment in a county jail not exceeding one year, a fine not exceeding one thousand dollars ($1,000), or both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years, a fine

not exceeding ten thousand dollars ($10,000), or both that fine and imprisonment." (*Ibid.*)

In *Hill, supra,* 23 Cal.4th 853, the defendant also argued he had violated only the child abduction statute and not the kidnapping statute with respect to his infant victim. There we observed that "we see no evidence that he intended to detain or conceal Marissa from her mother. Indeed, he kept them together. Thus, we need not, and do not, decide here whether a person can be guilty of violating both statutes if the elements of each are present. [Citation.]" (*Id.* at p. 858.)

Although *Hill* found it unnecessary to decide the issue, an earlier Court of Appeal decision suggests that a defendant may be convicted of both child abduction and kidnapping if the elements of each crime are present. "Child stealing has always been considered in California to be a crime against the parent, not the child. It is designed to protect parents against the anxiety and grief which necessarily follow from the taking of their children. [Citations.] But it belies common sense to suggest, as appellant apparently does, that in forcibly stealing a baby from his or her mother . . . appellant did not also commit a crime against the child, the crime of simple kidnapping. In *Parnell v. Superior Court, supra,* 119 Cal.App.3d at pages 402-403, footnote 3, the court interpreted *Oliver* to mean that 'the kidnapping of a minor can be accomplished even if unaccompanied by force so long as it was done for an improper purpose, because a minor "is too young to give his legal consent to being taken . . . ." ' Nothing in *Oliver* prevents appellant's prosecution for both the crime against the parent and the crime against the child." (*People v. Campos* (1982) 131 Cal.App.3d 894, 899 [182 Cal.Rptr. 698].)

We agree with *Campos.* There is a fundamental difference between kidnapping and child abduction in terms of the person targeted by the offense; the first is a crime against the person being kidnapped, the second against the parents of the child abducted. If there is evidence that a defendant's conduct is aimed at both, there is no reason why he or she should not be prosecuted under both statutes.[6] To hold otherwise would be to devalue the dignity and bodily integrity of child victims. In any event, inasmuch as the evidence clearly supports the prosecution's decision to charge minor with kidnapping, we need not decide whether she also could have been charged with child stealing, or whether the petition could have been sustained on that count.

---

[6]Defendants would be free to argue that punishment under both statutes violates Penal Code section 654's proscription against dual punishment.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.