Filed 11/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>SUDESH SINGH,<br><br>    Defendant and Appellant. | A154826<br><br>(City & County of San Francisco<br>Super. Ct. No. SCN225090) |

Defendant Sudesh Singh appeals from his conviction for kidnapping (Pen. Code, § 207, subd. (a)[1]). He seeks reversal on the grounds that: (1) the trial court improperly instructed on the illegal intent or purpose element for kidnapping; (2) the court erroneously failed to instruct on whether his moving the victim was incidental to the crime of child endangerment in determining the asportation element for kidnapping; and (3) there was insufficient evidence of asportation and an illegal intent or purpose. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Summary of the Trial Evidence**

Defendant was charged by information with felony kidnapping a one-year-old child (§ 207, subd. (a)) and misdemeanor abusing or endangering the health of a child (§ 273a, subd. (b)). The following is a summary of the relevant trial evidence.

The mother of the victim (Mother) testified that one morning in November 2015, she and her son waited for a bus outside of the U.S. Citizenship and Immigration building on Sansome Street in San Francisco. At the time, her son was nearly two years old.

_____

[1]    All further statutory references are to the Penal Code unless otherwise specified.

Defendant approached and spoke to the child, whom Mother was carrying. Mother speaks only Spanish and could not understand him. Defendant touched her son's hand and made gestures trying to coax him off her. Defendant eventually stopped touching the child but kept talking to him for several minutes while laughing. During this interaction, the child was calm, not crying, and not laughing at defendant's conduct. Mother told her son not to pay attention to defendant, and believed he did not. She assigned no importance to defendant or his actions, did not speak to him, and did not tell him to go away because she thought he was also waiting for the bus.

Mother stepped into the bus when it arrived, and she put her son down to pay the fare. The child did not cry as Mother put him down, and she did not notice anything that would put him in danger. At this point, defendant picked the child up and walked away from the bus.

Upon hearing her son either crying or saying something, Mother turned around and ran after him. Defendant got about five steps away from the bus before Mother yanked her son out of defendant's arms. Mother had not given defendant permission to touch her son or take him from the bus. After returning to the bus, Mother called her brother and asked him to call the police. Defendant was arrested three days later trying to enter San Francisco International Airport from the airport BART station.

Videos from the bus and from the U.S. Citizenship and Immigration building were played and admitted into evidence. The videos showed defendant's pre-taking contact with Mother and her son, his taking the child off the bus, and Mother reclaiming her child. The bus footage reflected that the child began crying moments after defendant picked him up and that he continued to cry for a short time after he and his mother got back on the bus.

Defendant testified on his own behalf. He said he went to the U.S. Citizenship and Immigration building that day to report to his immigration officer, though he had no appointment. He noticed the line into the building was long, so he decided to hang around until it got shorter. His attention was drawn to Mother and her son because the child was crying. Mother did not object when he made contact with the child to cheer

him up. He did not know the child's age, just that he was fairly young. After the bus arrived, defendant noticed the child had taken several steps behind Mother as she was paying the fare. While Mother's back was turned, defendant reflexively picked up the child. He did so without saying anything to Mother or checking to see if the bus driver was looking at him, because it appeared the child was about to step off the bus and might fall and hurt himself. After picking up the child, he reflexively took a few steps back while trying to make sure the child was okay, at which point he noticed Mother reaching for her child. He handed the child back to her and said nothing because everything happened quickly. Defendant denied ever intending to take the child away from Mother and claimed his only intention was to protect the child. He explained he went to the airport three days later because he wanted to take a trip to Las Vegas. Defendant admitted he had been convicted of three prior felonies involving moral turpitude.

## B. Instructions, Arguments, and the Outcome of Trial

For the kidnapping count, the trial court instructed the jury with CALCRIM No. 1201, which required the People to prove that defendant used physical force to take and carry away an unresisting child, that he moved the child a substantial distance, that he moved the child with an illegal intent or for an illegal purpose, and that the child was under 14 years old at the time of the movement. As given, the instruction defined "substantial distance" as follows: "Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection." (Italics omitted.)

With regard to the child endangerment count, the trial court instructed with CALCRIM No. 823 that the People had to prove that "defendant willfully inflicted unjustifiable physical pain or mental suffering on a child." In addition, and as relevant here, the court also instructed that "[w]ords and phrases not specifically defined in these

3

instructions are to be applied using their ordinary, everyday meanings." (CALCRIM No. 200.) The court also gave instructions concerning attempted kidnapping, false imprisonment, and the defense to kidnapping of protecting a child from imminent harm (CALCRIM No. 1225).

During closing argument, the prosecutor contended defendant was guilty of kidnapping because he took and moved the child away from Mother a substantial distance with no right or reason to do so. He explained the requirement that a defendant move a child with an illegal intent or purpose was in place to ensure that people engaging in harmless conduct—such as a babysitter who picks up the wrong child from school, or a sibling who takes a child to a park—are not penalized. The prosecutor asserted he could not prove defendant's motivations, but regardless, defendant had no right or reason to take the victim from his mother. Defense counsel argued during closing that the only possible illegal intent or purpose that could be conjured in this case was that defendant intended to take or steal the child away. She urged the jury to reject that theory and to find defendant was trying to protect the child.

The jury found defendant guilty of kidnapping but was unable to reach a verdict on the child endangerment count. The trial court declared a mistrial as to the child endangerment count and ultimately dismissed it. The court sentenced defendant to five years, awarding him a total of 1096 days of credit.

DISCUSSION

**A. CALCRIM No. 1201 and the Illegal Intent or Purpose Element**

In *In re Michelle D.* (2002) 29 Cal.4th 600 (*Michelle D.*), the Supreme Court held that the offense of kidnapping an unresisting infant or child requires proof that the defendant moved the victim for an illegal purpose or with an illegal intent. (*Michelle D.*, at p. 612.) This holding was derivative of an earlier holding in *People v. Oliver* (1961) 55 Cal.2d 761, 768 (*Oliver*). The illegal purpose or intent element was codified in section 207, subdivision (e) (section 207(e)), which provides: "For purposes of those types of kidnapping requiring force, the amount of force required to kidnap an unresisting infant or child is the amount of physical force required to take and carry the child away a

4

substantial distance for an illegal purpose or with an illegal intent." This illegal intent or purpose element is incorporated into CALCRIM No. 1201, the standard jury instruction for kidnapping a child or person incapable of giving consent, which was given in this case.

While acknowledging the trial court instructed with CALCRIM No. 1201, defendant claims the court violated its sua sponte duty to instruct on all the elements of the crime because it failed to further define what illegal purpose or intent he may have had. He asserts that the phrase "illegal intent or for an illegal purpose" is unconstitutionally vague and broad, and that the failure to define the possible scope of a defendant's alleged illegal intent or purpose based on the evidence provides inadequate guidance to the jury.[2] We are unpersuaded.

In criminal cases, a trial court has a sua sponte duty to instruct regarding the general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case (*People v. Estrada* (1995) 11 Cal.4th 568, 574 (*Estrada*)), including the elements of a charged offense. (*People v. Bell* (2009) 179 Cal.App.4th 428, 434 (*Bell*).) " '[T]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. *If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language.*' " (*Estrada*, at p. 574, italics added.) "The rule to be applied in determining whether the meaning of a statute is adequately conveyed by its express terms is well established. *When a word or phrase ' "is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request."* ' [Citations.] A word or phrase having a technical, legal meaning requiring

---

[2]    The People contend defendant forfeited these instruction-based arguments by not raising them below. We will address the merits of defendant's arguments. (*People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 (*Smithey*); *People v. Grandberry* (2019) 35 Cal.App.5th 599, 604.)

clarification by the court is one that has a definition that differs from its nonlegal meaning." (*Id.* at pp. 574–575, italics added and omitted.) We review defendant's instructional error claims de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Here, the trial court properly instructed the jury with CALCRIM No. 1201, which required the People to prove that defendant "moved the child with an illegal intent or for an illegal purpose." This instructional language tracks section 207(e) as well as the language in *Michele D.* and *Oliver.* (See *Michele D., supra,* 29 Cal.4th at p. 612; *Oliver, supra,* 55 Cal.2d at p. 768.) The terms "illegal intent" and "illegal purpose" are commonly understood by those familiar with the English language and cannot reasonably be viewed as meaningless in the context of child kidnapping without further definition. Nor does defendant claim those terms have a technical, legal meaning. Accordingly, the court had no sua sponte duty to expand on the definition of the phrase "illegal intent or for an illegal purpose."

Defendant nonetheless maintains the instruction was so vague and broad it created a likelihood the jury punished him for innocent conduct. We disagree.

In evaluating whether a jury instruction provides inadequate guidance, we ask "whether there is a reasonable likelihood the jury understood the charge as defendant asserts. [Citations.] We determine how it is reasonably likely the jury understood the instruction, and whether the instruction, so understood, accurately reflects applicable law." (*People v. Raley* (1992) 2 Cal.4th 870, 899 (*Raley*).) "[W]hen it is argued the instruction is so vague and confusing as to violate fundamental ideas of fairness, 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " (*Id.* at p. 901.)

Here, there is no reasonable likelihood the jury understood the instruction as defendant suggests or in a way that violates the law. Instead, it is highly likely the jury understood the terms "illegal intent" and "illegal purpose" in accord with the common understanding of those words, i.e., in contrast with a lawful, innocent, or innocuous intent or purpose, which accurately reflects our case law. (*Michele D., supra,* 29 Cal.4th at pp. 607, 611–612; *Oliver, supra,* 55 Cal.2d at pp. 765–766, 768; see *People v.*

6

*Westerfield* (2019) 6 Cal.5th 632, 716 (*Westerfield*).) As indicated, the jury was instructed, and the prosecutor's closing argument reiterated, that when words and phrases are not specifically defined, the jury is to use their ordinary, everyday meanings. Other arguments made by the parties also highlighted this point to the jury. For instance, the prosecutor explained the illegal intent or purpose requirement was meant to ensure that people engaging in harmless conduct—such as a babysitter who picks up the wrong child from school, or a sibling who takes a child to a park—were not penalized. This explanation essentially mirrored the controlling case law. (*Michele D.*, *supra*, 29 Cal.4th at p. 612 [contrasting the "illegal purpose or intent" requirement with individuals who move a person for innocuous purposes, such as "a sibling who takes a child to the park, or for a babysitter who picks up the wrong child from school by mistake"].)

Significantly, neither party suggested defendant could be convicted if he took the child for innocent purposes. The prosecutor contended that defendant's illegal intent or purpose was stealing the child away from his mother. Defense counsel agreed that an intent to take the child away from Mother was the only imaginable illegal intent or purpose in the case, but she argued evidence of that intent was lacking because defendant testified he was trying to protect the child from perceived danger.

Defendant's reliance on *Johnson v. United States* (2015) 135 S.Ct. 2551 (*Johnson*) is misplaced. *Johnson* involved the Armed Career Criminal Act of 1984 (ACCA), which enhanced punishment for an offender with three or more "violent felony" convictions. (*Johnson*, at p. 2555.) To apply a statutory "residual clause" that defined "violent felony" as a crime punishable by imprisonment for more than one year and involving "conduct that presents a serious potential risk of physical injury to another," courts used a "categorical approach" to determine whether a crime qualified as a violent felony, meaning courts had to assess crimes " 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.' " (*Id.* at pp. 2555–2557, italics omitted.) The high court struck down the residual clause as unconstitutionally vague, finding that application of the categorical

7

approach denied fair notice to defendants of the punishable conduct and was so standardless that it invited arbitrary judicial enforcement. (*Id.* at p. 2557.)

Here, defendant does not challenge a statutory clause; rather, he objects to instructional language. But even if *Johnson*'s analysis were applied, the phrase "illegal intent or for an illegal purpose" in CALCRIM No. 1201 does not deny fair notice to defendants of the type of conduct that is punishable as child kidnapping; nor does it invite arbitrary enforcement by judges. (See *Johnson*, *supra*, 135 S.Ct. at pp. 2555–2560.)

In sum, we reject the foregoing claim of instructional error.

### B. CALCRIM No. 1201 and the Associated Crime Factor

Defendant next contends the trial court erred by failing to modify the asportation element in CALCRIM No. 1201 sua sponte to instruct the jury to consider whether his movement of the child was incidental to the "associated crime" of child endangerment. Consequently, he argues, his constitutional rights were violated when the jury neglected to consider all relevant factors pertaining to the element of asportation.[3]

As previously stated, a trial court has a sua sponte duty to instruct on all elements of an offense and on the general principles of law governing a case. (*Bell*, *supra*, 179 Cal.App.4th at p. 434.) This means the court must provide " 'adequate instructions on the defense theory of the case' if supported by the law and evidence." (*Ibid.*) " 'An appellate court reviews the wording of a jury instruction de novo' [citation], and determines whether 'the instructions are complete and correctly state the law' [citation]." (*Id.* at p. 435.)

Kidnapping requires proof of asportation, i.e., proof that the defendant moved the victim a "substantial distance." (CALCRIM No. 1201; § 207(e); *Bell*, *supra*, 179 Cal.App.4th at p. 435.) In *People v. Martinez* (1999) 20 Cal.4th 225 (*Martinez*),[4] the Supreme Court altered the asportation standard for simple kidnapping and child

---

[3]    As above, the People contend the claim was forfeited. We will address the merits. (*Smithey*, *supra*, 20 Cal.4th at p. 976, fn. 7.)

[4]    *Martinez* was overruled in part on grounds not relevant here by *People v. Fontenot* (2019) 8 Cal.5th 57, 70.

8

kidnapping cases by holding that a finding of asportation is not to be determined solely by actual distance, and that the jury should consider the totality of the circumstances when assessing whether the distance a defendant moved a victim was "substantial." (*Martinez*, at p. 237 & fn. 6.) That is, where the evidence permitted it, the jury should consider "contextual factors," such as "whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Id.* at p. 237.)

Relevant to the present claim, the *Martinez* court also said: "in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality." (*Martinez*, *supra*, 20 Cal.4th at p. 237.) Drawing in part from the aggravated kidnapping statutes, *Bell*, *supra*, 179 Cal.App.4th 428 defined "associated crime" as "*any* criminal act the defendant *intends* to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will." (*Bell*, at pp. 438–439, italics in original and italics added.)

Here, the trial court instructed the jury to consider the totality of the circumstances and the various contextual factors set out in *Martinez* to decide whether the victim was moved a substantial distance. Neither party asked for, and the court did not give, instructions concerning the so-called "associated crime" factor.

We agree with the People that an instruction regarding the associated crime factor was unnecessary because, while the child endangerment and kidnapping counts were based on the same general conduct, there was no evidence that defendant *intended* to inflict unjustifiable physical pain or mental suffering on the child and, in the course of committing that criminal act, moved the child.[5] (See *Bell*, *supra*, 179 Cal.App.4th at

---

[5]     Since we dispose of the claim on this ground, we decline to reach the People's other claims that the associated crime factor does not apply in child kidnapping cases, or that instruction regarding the "associated crime" factor is a pinpoint instruction that the trial court did not have to instruct on sua sponte.

9

p. 439 [finding the evidence supporting the kidnapping and evasion charges met the associated crime test where the evidence supported a finding that the "defendant *intended to evade* the police and did so recklessly"], italics added.) In this case, it was unnecessary for the prosecutor to prove that defendant intended to inflict such pain or suffering on the child (*People v. Sargent* (1999) 19 Cal.4th 1206, 1219 & 1224), and the prosecutor stated during his opening statement and closing argument that he could not and would not try to prove what motivated defendant's actions. There was no evidence or argument indicating that defendant moved the child while intending to inflict pain or suffering. The crux of defendant's testimony and defense was that he moved the child to protect him. Defendant never testified, and defense counsel never argued, that his movement of the child was incidental to the child endangerment offense or any other crime; instead, counsel argued defendant was telling the truth about moving the child to protect him.[6]

The cases defendant relies on—*Bell*, *supra*, 179 Cal.App.4th 428, *People v. Delacerda* (2015) 236 Cal.App.4th 282 (*Delacerda*), and *People v. Williams* (2017) 7 Cal.App.5th 644 (*Williams*)—do not support an alternate conclusion in this case.

In *Bell*, the defendant, who was a parolee with an outstanding warrant, met with his ex-wife who was going to repay him a debt. (*Bell*, *supra*, 179 Cal.App.4th at p. 432.) During this meeting, the defendant and his ex-wife were in his car when officers confronted the defendant. (*Ibid.*) The defendant sped off, leading officers on a car chase. (*Ibid.*) His ex-wife remained in his car for part of the car chase. (*Id.* at pp. 432–433.) The defendant was convicted, in part, of evading police while driving recklessly and kidnapping. (*Id.* at p. 433.) Upon finding the evidence supported a finding that the defendant *intended* to evade the police and did so recklessly, and that he moved the victim by force or fear against her will in the course of that evasion, the *Bell* court

---

[6] Consistent with defendant's theory of the case, the trial court instructed the jury defendant was not guilty of kidnapping if he took or detained the child to protect the child from danger of imminent harm.

10

determined that the charged crimes were "associated," necessitating a sua sponte instruction on the associated crime factor. (*Id.* at pp. 439–440.)

In *Delacerda*, the victim's jealous ex-boyfriend kept her inside her apartment and demanded she let him look at her emails. (*Delacerda*, *supra*, 236 Cal.App.4th at p. 285.) The victim unsuccessfully tried to run three times, but each time the defendant tackled her. (*Id.* at p. 286.) The third time she tried to run, the defendant assaulted her with a firearm before dragging her back to her bedroom where he shoved her into a closet and blocked her exit. (*Ibid.*) The victim testified the defendant held her under her armpits when dragging her, and he choked her or covered her mouth when she tried to scream. (*Id.* at pp. 288, 291–292.) The *Delacerda* court found "[t]hese acts of harmful or offensive touching are criminal acts which 'the defendant *intend*[*ed*] *to commit where*, in the course of [their] commission, the defendant also move[d] a victim by force or fear against his or her will.' " (*Id.* at p. 292, italics added.) Comparing such evidence to the evidence of the acts in *Bell*, the court determined that the alleged domestic violence battery was an associated crime of the alleged kidnapping, and that the trial court prejudicially erred by not instructing sua sponte on the associated crime factor. (*Id.* at pp. 292–294.)

Finally, *Williams* involved a situation where the defendants moved employees of an AT&T store from the front of the store to the back room (about 50 feet), then took one employee to the adjoining vault room to open safes. (*Williams*, *supra*, 7 Cal.App.5th at p. 671.) The court reversed the simple kidnapping convictions, concluding there was insufficient evidence of asportation because the movement of the victims was merely incidental to the commission of the robbery. (*Id.* at pp. 671–672.)

*Bell*, *Delacerda*, and *Williams* each involved facts amply showing that the defendants intended to commit crimes other than kidnapping (evasion, domestic violence battery, robbery), and that they moved the victims to accomplish those crimes. There is no similar evidence here.

For the reasons stated, we reject this claim of instructional error.

11

### C. Substantial Evidence of Illegal Intent or Purpose and Asportation

Defendant's final argument is the evidence was insufficient to establish that he acted with illegal intent or for an illegal purpose because there was no evidence he picked up the victim with "nefarious intent." On this point, defendant asserts "the prosecutor never established any theory for why [defendant] would want to remove [the child] from the custody of his mother." He also contends insufficient evidence supported the asportation element of kidnapping because the victim's movement was incidental to the child endangerment count, the movement occurred in the day time in the middle of the city, and the distance involved was very short.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

As discussed, it is an element of kidnapping an unresisting child that the defendant move the child while harboring an illegal intent or purpose. (*Michele D.*, *supra*, 29 Cal.4th at p. 612.) Kidnapping also has an asportation element: the People must prove the defendant moved the child a substantial distance. "*Substantial distance* means more than a slight or trivial distance." (CALCRIM No. 1201; *People v. Morgan* (2007) 42 Cal.4th 593, 607.) "[O]ur Supreme Court has 'repeatedly stated no minimum distance is required to satisfy the asportation requirement.' " (*People v. Robertson* (2012) 208 Cal.App.4th 965, 986.) What constitutes a "substantial distance" is resolved by considering the totality of the circumstances, including non-exclusive contextual factors, such as "whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Martinez*, *supra*, 20 Cal.4th at p. 237.)

We conclude there is sufficient evidence to satisfy both the illegal purpose or intent element and the asportation element.

First, there was substantial evidence of an illegal intent or purpose. Specifically, the evidence was undisputed that defendant took the child away from his mother without her knowledge or consent. In rejecting defendant's claim that he took the child to protect him, the jury determined he had no legitimate or lawful reason for carrying away the child. As one court has indicated, to satisfy the illegal intent or purpose requirement, the lack of a lawful purpose for separating a child from his or her parent without the parent's knowledge and consent "*is all that the law requires.*" (*Westerfield*, *supra*, 6 Cal.5th at p. 717, italics added; see *People v. Jones* (2003) 108 Cal.App.4th 455, 465–466; Fam. Code, § 3010.)

Second, with regard to asportation, we observe the record lacks an exact measurement of the actual distance defendant moved the child. Nonetheless, the video evidence shows defendant removing the child from inside the bus and taking about five steps away before Mother ran and caught up. During closing argument, defense counsel estimated the child was moved six to ten or twelve feet, while the prosecutor estimated ten to fifteen feet. Accepting the parties' assessment that defendant moved the child ten or so feet from Mother, we cannot say the movement was insubstantial considering the totality of the circumstances. The victim here was extremely vulnerable: he was just shy of two years old and only spoke a little bit of Spanish. A child such as this had no means of fending off an adult kidnapper, or protecting himself, or finding his mother after a physical separation. Without speaking a word and behind Mother's back, defendant picked up this child and took him from one environment, the inside of the bus where his mother was, to another environment, outside of the bus where no one knew the child and the child knew no one. (See *Martinez*, *supra*, 20 Cal.4th at p. 236; *People v. Shadden* (2001) 93 Cal.App.4th 164, 169 (*Shadden*) ["Where movement changes the victim's environment, it does not have to be great in distance to be substantial"].)

The change in environment was significant in this case because it separated the child from his mother, the only nearby adult who knew him and provided him safety.

Also, a bus is a mode of public transportation that can shut its doors and take off rapidly; had that occurred here, it would have substantially increased the risk of harm to the child and enhanced defendant's opportunity to commit additional crimes. (See *Martinez*, *supra*, 20 Cal.4th at p. 233 [" 'The fact that these dangers do not in fact materialize does not . . . mean that the risk of harm was not increased' "].) Considering the totality of the circumstances, a jury could readily and reasonably conclude that the distance defendant moved the child was substantial as it increased the risk of physical or psychological harm to the child above that which existed prior to the asportation, and that the movement enhanced defendant's opportunity to flee with the child and commit additional crimes. (See, e.g., *Shadden*, *supra*, 93 Cal.App.4th at pp. 169–170 [evidence of asportation sufficient where defendant moved victim nine feet from store's front counter to a back room; movement of victim to location outside of public view increased the risk of harm to victim by enhancing defendant's opportunity to commit other crimes]; *People v. Arias* (2011) 193 Cal.App.4th 1428, 1431 & 1435 [acquittal motion properly denied where defendant walked victim 15 feet to victim's apartment; movement to secluded place increased victim's risk of harm and made detection less likely if defendant were to commit an additional crime].)

Finally, we reject defendant's contention that the movement was merely incidental to the child endangerment count. As discussed previously, the evidence fell short of indicating that the alleged child endangerment crime was an associated crime within the meaning of *Bell*, *supra*, 178 Cal.App.4th at pages 438–439.

Having reviewed the entire record in the light most favorable to the judgment, we find substantial evidence supporting the kidnapping conviction.

## DISPOSITION

The judgment is affirmed.

_____
Fujisaki, J.

WE CONCUR:


_____
Siggins, P. J.

_____
Goode, J. *




A154826



---

*     Retired Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

People v. Sudesh Singh

(A154826)

Trial court:        City & County of San Francisco

Trial Judges:       Hon. Bruce E. Chan

Attorneys:          First District Appellate Project's Independent Case System, John L. Staley for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Ashley Harlan, Deputy Attorney General.