Filed 10/21/20 P. v. Wealth CA2/8

Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHEBETH WEALTH,<br><br>    Defendant and Appellant. | B294035<br><br>(Los Angeles County<br> Super. Ct. No. BA462465) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Curtis B. Rappe, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, William H. Shin, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Shebeth Wealth assaulted a social worker during a visit with her minor son and then fled with her son in tow. She was arrested later that night at her home, and her son was returned to the custody of the Los Angeles County Department of Children and Family Services (Department). Defendant was convicted by jury of kidnapping, child detention and assault causing great bodily injury. She was sentenced to nine years in prison.

In our original unpublished decision filed November 26, 2019, we reversed the three-year sentence on the great bodily injury enhancement, remanded for a new sentencing hearing and otherwise affirmed defendant's conviction. Our original decision further concluded Penal Code section 1001.36, enacted in June 2018, did not apply retroactively.

Defendant filed a petition for review with the Supreme Court. The Supreme Court granted review and deferred further consideration of the matter pending its disposition in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). After issuance of the *Frahs* decision in which it concluded Penal Code section 1001.36 applies retroactively to cases not yet final on appeal, the Supreme Court, by order dated August 19, 2020, transferred the matter to this court with directions to vacate our original decision and reconsider the cause in light of *Frahs*.

Having done so, we conclude defendant forfeited her right to seek mental health diversion pursuant to Penal Code section 1001.36. We again affirm defendant's conviction, reverse the three-year sentence on the great bodily injury enhancement and remand for a new sentencing hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2017, defendant went to Darby Park in Inglewood for a scheduled, monitored visit with her minor son, S.W., who was a dependent of the court. Rosita Brennan, a Department social worker, accompanied S.W. to the visit. Ms. Brennan was the coworker of the social worker assigned to the case who no longer attended visits because defendant had verbally threatened her with harm, resulting in the issuance of a restraining order. Ms. Brennan had monitored about eight of defendant's visits with S.W. before that day.

Defendant arrived late to the visit accompanied by her teenage daughter, H.W., who was also a dependent child, but H.W. had run away from her placement. For about 20 minutes or so, S.W. played on the playground while defendant sat on a bench talking with H.W. At some point, she appeared to be on a phone call with another family member who lived out of state. Ms. Brennan attempted to reach her supervisor to alert her to the fact that H.W. was at the visit and to ask how she should handle the situation.

Ms. Brennan was told to attempt to interview H.W. and ask her if she wanted to "return to the Department to receive services." H.W. declined. Defendant reacted angrily to Ms. Brennan's attempt to speak with H.W. Ms. Brennan headed into the community center at the park to attempt to reach her supervisor again on the phone. Defendant followed her inside and continued yelling at her. Ms. Brennan was instructed by her supervisor to terminate the visit. Ms. Brennan told defendant she was terminating the visit on the instruction of her supervisor and then took S.W. by the hand and started to leave.

3

Defendant became very angry, was yelling profanities and screamed for H.W., saying Ms. Brennan was terminating the visit. H.W. ran over from the vending machines and tried to pull her brother away from Ms. Brennan and also punched Ms. Brennan several times in the face and neck. Ms. Brennan yelled for assistance and asked for someone to call the police. Defendant grabbed Ms. Brennan by her hair and "slammed" her head into the wall. Ms. Brennan fell backwards onto the floor in great pain.

Arrick Turner, a senior recreation supervisor at the park, heard angry voices in the lobby of the community center. He was standing just outside the open door and did not see what started the argument. As he stepped inside the lobby to see what was going on, Mr. Turner saw defendant swing at Ms. Brennan, who was in a defensive posture. Ms. Brennan's glasses were knocked from her face.

Mr. Turner told a staff member, Javon Davis, to intervene as he went to call the police. Mr. Davis ran over and saw defendant repeatedly hitting Ms. Brennan's head and face with her fist as Ms. Brennan lay on the floor. Ms. Brennan was screaming for help. Mr. Davis intervened and stopped the assault. At that point, he noticed defendant had a shoe "with a pretty thick heel" in one of her hands.

After calling 911, Mr. Turner joined Mr. Davis standing near the two women. Ms. Brennan was on the floor. She had a "knot" on her head and someone had gotten her an icepack. She also had blood on her face. Mr. Turner heard H.W. tell defendant "don't take him," but defendant responded "let's go" and left with both H.W. and S.W. Ms. Brennan was treated by paramedics and taken to the hospital.

Defendant was arrested that night at her home.  S.W. was found inside the home and returned to the custody of the Department.

Defendant was charged with kidnapping (Pen. Code, § 207, subd. (a); count 1), child detention (§ 278.5; count 2), and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 3).  It was alleged as to count 3 that defendant caused the victim great bodily injury in the commission of the offense (§ 12022.7, subd. (a)).

The case proceeded to a jury trial in May 2018.  Ms. Brennan, Mr. Turner, Mr. Davis and another Department social worker attested to the above facts.

Defendant testified that she and H.W. were playing with S.W. and enjoying their visit when Ms. Brennan told her she needed to speak with H.W.  Ms. Brennan told defendant that if she refused to allow her to speak with her daughter, then she would have to terminate her visit with S.W.  Defendant asked her daughter to please speak with Ms. Brennan and H.W. agreed.  Ms. Brennan accused H.W. of being a prostitute, so H.W. stopped talking.  Defendant suggested they all go inside the community center where they could have more privacy.  Defendant denied being angry with Ms. Brennan or yelling at her.

At some point while they were inside, Ms. Brennan received a text message, then got up and "snatched" S.W. out of his chair, causing him to cry, and started to leave.  Defendant told Ms. Brennan that was not the proper way to end the visit to which Ms. Brennan replied, "Don't make me call the police."  H.W. tried to block Ms. Brennan from leaving, telling her she should not be dragging her brother like that and Ms. Brennan pushed H.W. out of the way twice.  H.W. and Ms. Brennan

5

started to take swings at each other and defendant tried to intervene but Ms. Brennan pushed her out of the way. One of H.W.'s punches caused Ms. Brennan to fall to the floor. She did not believe there was anything wrong with Ms. Brennan. Defendant denied hitting Ms. Brennan or grabbing her head and pushing her into a wall. Defendant left with H.W. and S.W. and took them back to her home. Defendant explained she did not take S.W. to the Department office after leaving the park because it was too late and the office was already closed. Defendant said she planned on calling her attorney and taking S.W. back to the office in the morning. Defendant also said she could not call anyone from the park or on the way home because the battery on her phone had died.

H.W. testified she had been playing with her brother when Ms. Brennan, acting "very rude," asked her if she was defendant's daughter, H.W. She said yes and noticed Ms. Brennan giving her mother "dirty looks." Ms. Brennan then made numerous phone calls and abruptly announced the visit was over. Ms. Brennan grabbed S.W.'s arm "aggressive[ly]" and started to pull him away, and he began to cry. H.W. leaned down to say goodbye to her brother and Ms. Brennan shoved her twice. H.W. thought Ms. Brennan was going to hit her so she hit her first and they struggled for a bit. Ms. Brennan hit H.W. many times, but H.W. was able to hit her back at least once and then Ms. Brennan "fainted" and fell to the floor. H.W. said her mother never hit Ms. Brennan, but only tried to intervene and push Ms. Brennan away.

The jury found defendant guilty as charged and found true the great bodily injury allegation. The court sentenced defendant to state prison for nine years, calculated as follows: a midterm of

five years on count 1, a concurrent midterm of two years on count 2, a consecutive one-year term on count 3 (one-third the midterm), and a consecutive three-year term for the great bodily injury enhancement on count 3.  The court awarded defendant 592 days of presentence custody credits.

Without objection from defendant, the court imposed statutory fees and assessments:  $120 court operation assessment, $90 criminal conviction assessment and $300 restitution fine.  The court imposed and stayed a $300 parole revocation fine.  Also without objection from defendant, the court imposed a three-year protective order pursuant to Penal Code section 136.2, subdivision (i)(1).  Ms. Brennan and S.W. were identified as the protected persons.

Following remand from the Supreme Court, both defendant and respondent submitted supplemental briefing addressing the issue of whether defendant is entitled to a conditional reversal and remand to allow the trial court to conduct an eligibility hearing pursuant to Penal Code section 1001.36.

**DISCUSSION**

**1.    Mental Health Diversion**

Penal Code section 1001.36 became effective June 27, 2018, some four months *before* defendant was sentenced on October 19, 2018.  It authorizes the diversion of certain alleged offenders into mental health treatment programs in lieu of criminal prosecution.  (§ 1001.36, subd. (a) [court may "grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the requirements specified in paragraph (1) of subdivision (b)"].)

*Frahs* concluded that Penal Code section 1001.36 applies retroactively because it mitigates the possible punishment for a

7

specific class of offenders with certain enumerated mental health conditions and there is no clear contraindication of legislative intent. (*Frahs*, *supra*, 9 Cal.5th at pp. 630-637; see also *In re Estrada* (1965) 63 Cal.2d 740, 742-748 [an amendatory statute lessening punishment for a crime is presumptively retroactive, absent clear legislative intent for prospective application, and applies to all defendants whose judgments are not final at the time the statute becomes effective].)

Defendant argues she is entitled to the benefit of the amendatory provision and a conditional reversal and remand to allow the opportunity for an eligibility hearing.

We find the contention has been forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [general rule is "that only those claims properly raised and preserved by the parties are reviewable on appeal"].) Not only did Penal Code section 1001.36 take effect several weeks *before* the initial sentencing hearing in this matter on July 9, 2018, but the issue of defendant's mental health was squarely before the court from that date until October 19, 2018, when defendant was eventually sentenced. At no time during this period did defendant make any request for mental health diversion.

In her sentencing memorandum, defendant requested the court impose probation but did not specifically mention any mental health issues. The probation report recommended a state prison sentence, explaining that defendant's violent acts and the seriousness of the victim's injuries did not support an order of probation.

At the outset of the July 9, 2018 hearing, the trial court stated the case was both "serious" and "puzzling" and noted its tentative was to order a diagnostic evaluation of defendant

8

pursuant to Penal Code section 1203.03. (*Id.*, subd. (a) ["the court, if it concludes that a just disposition of the case requires such diagnosis and treatment services as can be provided at a diagnostic facility of the Department of Corrections, may order that defendant be placed temporarily in such facility for a period not to exceed 90 days, with the further provision in such order that the Director of the Department of Corrections report to the court his diagnosis and recommendations concerning the defendant within the 90-day period"].)

No party objected to the court's tentative and the court ordered defendant transferred temporarily to a diagnostic facility at the California Department of Corrections and Rehabilitation for a period not to exceed 90 days for an evaluation to be conducted in accordance with Penal Code section 1203.03, subdivision (a). The court scheduled a return date of October 19, 2018.

The report provided by the Department of Corrections and Rehabilitation recommended defendant be sentenced to prison, finding defendant not suitable for supervision on probation. The evaluator recounted defendant's refusal to show remorse, her insistence she did nothing wrong and was in fact "set up" by the Department of Children and Family Services, her demonstrated lack of impulse control, and her repeated attempts to contact her minor son in violation of the court's protective order. The evaluator stated defendant "presents as an individual who may re-offend in a similar nature" especially in light of her "lack of insight into her behaviors and focus on retribution." The report noted defendant presented with an "elevated mood" and "significant grandiosity" and would likely benefit from receiving mental health services in prison.

When the parties returned to court on October 19, 2018, some four months after Penal Code section 1001.36 took effect, defendant continued to urge the court to sentence defendant to probation but did not make any specific request for further mental health evaluation or for diversion under the four-month-old statute.  We think it is plain the contention has been forfeited.

## 2.    The Sentence on Count 2

The trial court imposed a concurrent sentence on count 2. Defendant contends the trial court's failure to stay the sentence violates the proscription against multiple punishment set forth in Penal Code section 654.  We disagree.

"Whether a defendant may be subjected to multiple punishment under [Penal Code] section 654 requires a two-step inquiry . . . .  We first consider if the different crimes were completed by a 'single physical act.'  [Citations.]  If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives.  [Citations.]  At step one, courts examine the facts of the case to determine whether multiple convictions are based upon a single physical act.  [Citation.] When those facts are undisputed—as they are here—the application of section 654 raises a question of law we review de novo."  (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312 (*Corpening*).)

Defendant asserts that count 1 (kidnapping) and count 2 (child detention) were completed by a single act—the act of

10

leaving the park with S.W.—and that act can only be punished once. The argument lacks merit.

Defendant engaged in a course of conduct, *not* a single act, involving two different victims. (See, e.g., *In re Michele D.* (2002) 29 Cal.4th 600, 614.) Defendant kidnapped S.W. in violation of Penal Code section 207 by absconding with him from the park after her violent assault on the social worker. Defendant then withheld and concealed S.W. within her home, depriving the Department of its lawful custody of the minor child, for the remainder of that day until her arrest that night in violation of section 278.5. The statute expressly prohibits not only the taking away of a child, but also the separate acts of keeping, withholding and concealing a child to deprive the lawful custodian of the right of custody. (See, e.g., *People v. Lazarevich* (2001) 95 Cal.App.4th 416, 423.)

This case is readily distinguishable from *Corpening*. There, the defendant was found guilty of robbery and carjacking a vehicle that contained several valuable, rare coins. (*Corpening, supra*, 2 Cal.5th at p. 315.) The single act of forcefully taking the car containing the rare coins completed both the carjacking and the robbery and therefore *Corpening* concluded that Penal Code section 654 required a stay of the sentence on the robbery count. (*Corpening,* at pp. 315-316.) Defendant committed several criminal acts here, and Penal Code section 654 does not apply.

## 3.     The Protective Order

The trial court imposed a three-year protective order at the time of sentencing pursuant to Penal Code section 136.2, subdivision (i)(1). Both Ms. Brennan and S.W. are identified as protected persons in the order. Defendant challenges only the inclusion of her minor son, S.W., in the scope of the order.

11

Defendant did not object to the trial court issuing the protective order as to S.W.  The court issued the protective order under Penal Code section 136.2, subdivision (i)(1).  That statute permits a court to impose a protective order for up to 10 years "[i]n *all cases* in which a criminal defendant has been convicted of a crime *involving* domestic violence as defined . . . in Section 6211 of the Family Code."  (Pen. Code, § 136.2, subd. (i)(1), italics added.)  Family Code section 6211, subdivision (e) includes in the definition of domestic violence abuse perpetrated against "a child of a party."  The kidnapping and child detention crimes were abuses perpetrated against defendant's child, and they involved domestic violence.  Not only did defendant abuse S.W. by kidnapping and detaining him, she further abused S.W. by smashing the social worker's head against the wall and viciously beating her in his presence.

## 4.    Remand for Resentencing Is Warranted

Respondent concedes defendant's claim of error with respect to the three-year sentence imposed on the great bodily injury enhancement on count 3.

We agree the three-year sentence on the enhancement is an unauthorized sentence.  The court imposed a consecutive one-year sentence on count 3 (one-third the midterm) in accordance with Penal Code section 1170.1, subdivision (a).  However, the court applied the full three-year term, instead of one-third of the term for the enhancement.  Section 1170.1, subdivision (a) requires that a one-third term be imposed on a specific enhancement attached to a subordinate offense.  (See, e.g., *People v. Sasser* (2015) 61 Cal.4th 1, 15-17.)

The three-year term on the enhancement is reversed and we remand for a new sentencing hearing at which the court may

12

assess its sentencing choices anew.  We express no opinion on how the court should exercise its discretion on remand.

Finally, defendant, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157, requests remand and an opportunity to argue her alleged inability to pay the statutory fines and fees imposed at sentencing.  Defendant failed to object to the imposition of these statutorily authorized fees at the time of sentencing and has therefore forfeited the argument on appeal.  However, respondent does not object to defendant being allowed the opportunity to raise the argument before the trial court on remand.

## DISPOSITION

The judgment of conviction is affirmed.

The three-year sentence on the great bodily injury enhancement on count 3 is reversed.  We remand for a new sentencing hearing.  Defendant has the right to be present and to be represented by counsel.  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 34-35.)

Following resentencing, the superior court is directed to prepare and transmit a new abstract of judgment to the Department of Corrections and Rehabilitation.


GRIMES, J.


I CONCUR:


BIGELOW, P. J.


13

**STRATTON, J., Concurring and Dissenting.**

There one issue upon which I add a different perspective. The sentencing here implicates Justice Moreno's comment in *In re Michele D.* (2002) 29 Cal.4th 600, 614. That case held that kidnapping an unresisting infant or child requires proof that the defendant moved the victim, not forcibly, but for an illegal purpose or with an illegal intent. Defendant there had argued that her conduct did not constitute kidnapping but at most child abduction under Penal Code section 278. (*Id.* at p. 613.) Writing for the majority, Justice Moreno stated: "There is a fundamental difference between kidnapping and child abduction in terms of the person targeted by the offense; the first is a crime against the person being kidnapped, the second against the parents of the child abducted. If there is evidence that a defendant's conduct is aimed at both, there is no reason why he or she should not be prosecuted under both statutes." (*Id.* at p. 614.) *"Defendants would be free to argue that punishment under both statutes violates Penal Code section 654's proscription against dual punishment."* (*Id.* at p. 614, fn. 6, italics added.)

This case presents the scenario Justice Moreno was talking about and I conclude Penal Code section 654 requires the trial court to stay the sentence on count 2. Penal Code section 654 prevents multiple punishments for a single act or omission or an indivisible course of conduct. (*People v. Miller* (1977) 18 Cal.3d 873, 885.) This is so even though the act or omission violates more than one statute and thus constitutes more than one crime. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) Imposition of concurrent sentences, as here, is precluded by Penal Code section 654 because the defendant is deemed to be subjected to

1

the term of both sentences although they are served simultaneously.  (*In re Wright* (1967) 65 Cal.2d 650, 654–655.)

Whether a defendant may be subjected to multiple punishments requires a two-step inquiry.  First, we consider if the different crimes were completed by a single physical act.  If so, the defendant may not be punished more than once for that act.  Only if the case involves more than a single act, that is, an indivisible course of conduct, does the court then consider whether that course of conduct reflects a single intent and objective or multiple intents and objectives.  (*People v. Corpening* (2016) 2 Cal.5th 307, 311–312.)

Here, witness Arrick Turner, one of the men who broke up the fight, succinctly summed up the act:  "[S]he took her son and left."  Javon Davis, the other non-party eyewitness to the fight, testified similarly:  "I recall a young lady grabbing the child and they left."  The two separate crimes, kidnapping and child abduction, were completed when appellant did exactly the same thing at the same time—carrying the child away from the custodial adult.[1]  There is no need to proceed to the second step of the inquiry.  The sentence on count 2 should have been stayed.  On this, I dissent.

STRATTON, J.

---

[1]  "Every person who . . . steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."  (Pen. Code, § 207, subd. (a).)  "Every person, not having a right to custody, who maliciously takes, entices away, keeps, withholds, or conceals any child with the intent to detain or conceal that child from a lawful custodian" is guilty of child abduction.  (Pen. Code, § 278.)